# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-09-00540-CR

---

**Zachery Quinn Bacon Jr., Appellant**

**v.**

**The State of Texas, Appellee**

---

**FROM THE DISTRICT COURT OF TOM GREEN COUNTY, 119TH JUDICIAL DISTRICT
NO. B-09-0431-SA, HONORABLE THOMAS J. GOSSETT, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

A jury found appellant Zachery Quinn Bacon guilty of possessing four grams or more of methamphetamine with intent to deliver and assessed punishment at forty years' imprisonment. *See* Tex. Health & Safety Code Ann. § 481.112(a), (d) (West 2010). Appellant's only contention is that his trial counsel was ineffective. We overrule this contention and affirm the conviction.

At 3:30 a.m. on January 22, 2009, San Angelo police officer Harold Caston responded to a report of a vehicle parked in the roadway. Caston testified that appellant was alone in the car, asleep. The officer-trainee with Caston drew his attention to a gun in the passenger seat. Caston also noticed a black bag that resembled a gun case at appellant's feet and cash in appellant's lap. Caston woke appellant and asked him for identification. Appellant showed the officer an "offender card." Caston ordered appellant out of the car, then he opened the black bag to see if there were any more

weapons. Inside the bag, Caston found scales, plastic bags, and what proved to be eighteen grams of methamphetamine. The cash in the car totaled just over $1000.

To prevail on a claim of ineffective assistance of counsel, a defendant must show by a preponderance of the evidence that counsel made such serious errors that he was not functioning effectively as counsel and that these errors prejudiced the appellant's defense to such a degree that he was deprived of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Perez v. State*, 310 S.W.3d 890, 892-93 (Tex. Crim. App. 2010). To satisfy the first, performance component, the defendant must overcome a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 688; *Perez*, 310 S.W.3d at 893. To satisfy the second, prejudice component, the defendant must show that, but for counsel's deficient performance, the result of the trial would have been different. *Strickland*, 466 U.S. at 694; *Perez*, 310 S.W.3d at 893.

Appellant alleges that his trial counsel's performance was deficient in eighteen respects. These deficiencies must be affirmatively demonstrated in the record. *Mallett v. State*, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001). Such a demonstration is hard to make when, as here, the ineffective assistance issue is raised for the first time on appeal, and counsel has not had an opportunity to explain his actions and decisions. *Id*. We will address each alleged deficiency in turn.

### 1. *Improper statement during voir dire*

Appellant contends that his attorney should have objected when the trial court misstated one of the qualifications for jury service during his comments to the jury panel. In

explaining that to be eligible for jury service, one must not be "under indictment or other legal accusation for misdemeanor theft or a felony," the court stated:

> You cannot presently be under legal accusation, that means an indictment, for a felony case, or a criminal complaint has been filed in a misdemeanor case against you, but it must be for felony theft—You must be under indictment for felony theft or a criminal complaint for misdemeanor theft. So it you are presently under a legal accusation for a theft charge, then you are not qualified to serve on a jury.

*See* Tex. Gov't Code Ann. § 62.102 (West Supp. 2009). Although this explanation may have been confusing, it was not incorrect. The court told the panelists that they must not be under indictment for a felony or legally accused of a theft of any degree. There was no basis for an objection, and appellant does not contend that he was adversely affected by the court's statement.

## 2. Statement by venire member

During voir dire, the prosecutor asked the panelists if any of them had positive or negative feelings toward law enforcement. One panelist responded, "My brother is a trooper and I have a nephew who is a trooper and they are just, you know, dealing with this all the time, and that's one of the hazards that they have to deal with, and one of the dangers is dealing with drugs and stopping people and their reactions and that type thing." Appellant contends that his attorney should have stopped this "inflammatory diatribe." Appellant does not explain how his attorney could have stopped the venire member from speaking. In any event, counsel could reasonably believe that in order to avoid offending the potential jurors, it was best not to interrupt the panelist.

### 3. Telling the panel appellant would testify

Defense counsel told the jurors during voir dire, "It is our intent at this moment that [appellant] will testify." Later, during trial and outside the jury's presence, counsel told the court, "I have discussed with my client and he is not going to testify." Appellant complains that his attorney should not have suggested to the jurors that he was going to testify unless he was sure of it.

With the benefit of hindsight, it may have been ill-advised for counsel to suggest to the jury that appellant would testify. But it may be that appellant had told counsel that he intended to testify and only changed his mind after trial began. On this record, it cannot be said that counsel clearly erred.

### 4. Referring to appellant as "the bad guy"

After telling the jury panel that appellant might testify, counsel went on to say, "He is the accused. He is the bad guy in the courtroom. Is there anybody that would not be able . . . to give a fair hearing to his testimony because he is the accused?" Appellant asserts that there was no justification for this "reckless language." In its brief, the State responds, "The record does not reflect trial counsel's affable, gregarious manner when he made the tongue-in-cheek comment about his youthful-appearing, clean-cut, nicely-dressed client being the 'bad guy.'" The State adds that "counsel's demeanor and terminology had members of the venire smiling at the appellant and trial counsel." Although we have no way of confirming the State's observations, we must presume that counsel used the term "bad guy" figuratively, not literally.

## 5. *Inadequate voir dire*

Appellant complains that defense counsel's voir dire of the jury panel was short—seven pages in the reporter's record—rambling, and disorganized. He complains that counsel spoke to only two panelists individually. He characterizes counsel's voir dire as "a disgrace."

We have no record to explain why appellant's lawyer conducted his voir dire as he did. We do know that he had the advantage of following the prosecutor's thorough voir dire. It may be that counsel reasonably believed that he had all information he needed to exercise his strikes, and that his brief voir dire was a considered attempt to avoid trying the jury's patience.

## 6. *Failure to strike*

Appellant complains that two panelists with connections to law enforcement served on the jury after his attorney failed to strike them.[1] Appellant asserts that no trial strategy could justify leaving these panelists on the jury, but we disagree. We must presume that counsel used reasonable professional judgment in exercising his strikes, and that he considered the two panelists in question to be more acceptable to the defense than those he struck. Appellant makes no attempt to show that this was not the case.

## 7. *Prosecutor's opening statement*

During her opening remarks at the guilt-innocence stage, the prosecutor told the jurors, "You won't be hearing from me at this phase of trial if this man has ever done anything

---

[1] There were seven panelists with law enforcement relationships. Of the others, one was struck for cause, two were peremptorily struck by defense counsel, and the others were outside the strike zone.

wrong before. . . . So, it's my duty and responsibility to bring evidence to you about this allegation, but you won't hear anything about any other types of crimes, so don't expect that." Appellant urges that his lawyer should have objected to this statement, which essentially told the jury that he had previous convictions. Counsel might have believed, however, that an objection would draw more attention to the prosecutor's remark and confirm its implication.

### 8. *Hearsay*

Appellant contends that his attorney should have voiced a hearsay objection when Caston testified that the trainee "signaled to me that there was a gun in the passenger seat." Assuming that this testimony was hearsay, counsel could have reasonably believed that it was admissible as a present sense impression. *See* Tex. R. Evid. 803(1).

### 9. *"Offender card"*

Appellant complains of his attorney's failure to object when Caston testified that appellant identified himself with an "offender card." We must again presume on this record that there was a reasonable basis for counsel's failure to object. As before, counsel may have believed that an objection would simply draw the jury's attention to the officer's remark.

### 10. *Pornography*

During his cross-examination of Caston, defense counsel inquired as to what other items were found inside the car. The officer replied that, among other things, there were "DVDs

from a porn shop" in the back seat. Appellant contends that by asking this question, his attorney invited this extraneous bad-conduct testimony and demonstrated that he was unfamiliar with the facts of the case.

We agree with appellant that it is difficult to justify counsel's asking such an open-ended question if he was aware of the contents of the vehicle inventory. This also led to additional prejudicial testimony, as we will discuss below.

### 11. Narrative question

During her redirect questioning, the prosecutor asked Caston, "[I]s there any more information that the jury should be aware of when they are making their decision?" Appellant contends that his attorney should have objected that this question called for a narrative answer. The State responds that, strictly speaking, the question could be answered yes or no. We conclude that the form of the question itself is less significant than the officer's answer, which is the next item.

### 12. Extraneous burglary

In response to the prosecutor's inquiry as to "any more information that the jury should be aware of," Caston testified that the videos in the car had come from a porn shop that had recently been burglarized. He added that the number of videos suggested that "somebody is just not renting them for the night." Although defense counsel voiced no objection to this testimony, the trial court interrupted the officer and removed the jury. The court asked the prosecutor if the State had given notice of this extraneous offense. She replied that it had not. The court then admonished both the prosecutor and the witness to stop "trying to throw in every reference you [can] to every possible

7

offense this man has been involved in." The court added, "[L]et's try him for what he is charged with rather than what might have happened out there that night."

Once again, it is difficult to conceive of a sound reason for defense counsel's failure to object to this extraneous-offense testimony. But assuming that defense counsel's performance was deficient in first adducing the testimony regarding the pornographic videos and then in failing to object to the testimony regarding the extraneous burglary, appellant has not shown that these deficiencies denied him a fair trial. The court admonished the jury not to consider the officer's testimony regarding the burglary, and the court's charge instructed the jury not to consider evidence of other crimes as evidence of appellant's guilt. We must assume that the jury heeded these admonishments. We must also take into consideration the circumstances under which appellant was found in possession of the methamphetamine. We are satisfied that the outcome of the trial would not have been different if counsel had been more alert to exclude the extraneous-offense evidence.

### 13. Opinion testimony

Narcotics officer Bill Mabe testified that based on his training and experience, the evidence in this case—the quantity of methamphetamine in appellant's possession, the scales, and the plastic bags—suggested that the methamphetamine was being possessed for sale. Appellant contends that his lawyer should have objected to this testimony, although he admits that the objection would have been overruled. We cannot fault counsel for failing to make a baseless objection.

### 14. Lack of employment

Appellant contends that his counsel should have objected when the prosecutor asked Mabe if he had been able to determine if appellant had "any legitimate employment." Mabe

8

answered, "Not that I know of." We note, however, that during cross-examination by appellant's attorney, Mabe conceded that he had not investigated appellant's employment status and acknowledged that as far as he knew, appellant might have been employed. The record does not clearly demonstrate deficient performance by appellant's attorney in this regard.

### 15. Purpose of gun

Appellant complains of his lawyer's failure to object when Mabe testified that "in a narcotics setting," a firearm "is there for protection" from other drug dealers and "for protection or use against law enforcement." We doubt that Mabe's testimony, if objectionable, told the jury anything they did not already know. We are satisfied that the admission of the testimony did not affect the outcome of the trial.[2]

### 16. Jury argument

Appellant urges that his lawyer should have objected when, during argument at the guilt stage, the prosecutor commented on appellant's failure to testify. The prosecutor said, "There was no testimony from the Defendant. That is his right. We talked about it in Voir Dire. We are all entitled to that. Nobody has to present evidence in their behalf. . . . [S]o please just consider the evidence that you do have and not the evidence that you don't have. Please don't even discuss that issue when you are engaging in your deliberations."

---

[2] The State asserts that the testimony was relevant to prove the allegation that appellant used a deadly weapon during the commission of the offense, but this issue was not submitted to the jury at the guilt stage.

Although the prosecutor plainly referred to appellant's failure to testify, it is apparent that she was discussing the court's charge, which included an admonition not to consider appellant's failure to testify as evidence of guilt. Far from suggesting that the jury should infer guilt from appellant's silence, the prosecutor urged the jury not to do so and to confine their deliberations to the evidence presented. Under the circumstances, defense counsel could have reasonably concluded that the prosecutor's remarks did not warrant an objection.

### 17. Absence of motions

Appellant complains that his attorney did not file any pretrial discovery motions. In the absence of any showing to the contrary, however, we must presume that such motions were not needed.

### 18. Failure to prepare

Appellant asserts, "When considered as a whole, the record supports the inferential conclusion that [defense] counsel failed entirely to properly investigate—to acquaint himself with the facts, and prepare a defense." To support this assertion, appellant points to defense counsel's statement to the court at the end of the first day of testimony that he intended to introduce all or part of the patrol car video of appellant's arrest. The following day, however, the defense rested without offering evidence. From this, appellant would have the Court infer that his attorney had watched the video for the first time overnight, and had only then realized that the video would not benefit the defense. Appellant also draws attention to the trial court's remark to defense counsel, "Well, there are lots of things that you should have done that I have kind of done for you here."

We have no evidence as to why appellant's attorney changed his mind about offering the video. We cannot merely assume that counsel had neglected to watch the video before trial began, and we must presume that the decision not to offer the video was an exercise of reasonable professional judgment. The trial court's comment about the things counsel should have done came during the charge conference and referred to the court having included an instruction on the lesser included offense of simple possession on its own motion.

Appellant's trial counsel may not have rendered perfect assistance, but appellant has not met his burden of clearly demonstrating from the record that counsel's performance was outside the broad range of reasonable professional assistance. The most serious matter raised by appellant, counsel's failure to object to the extraneous-offense evidence, has not been shown to have affected the outcome of the trial. The point of error is overruled.

The judgment of conviction is affirmed.

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Puryear and Pemberton

Affirmed

Filed: August 19, 2010

Do Not Publish