TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-09-00540-CR







Zachery Quinn Bacon Jr., Appellant



v.



The State of Texas, Appellee






FROM THE DISTRICT COURT OF TOM GREEN COUNTY, 119TH JUDICIAL DISTRICT


NO. B-09-0431-SA, HONORABLE THOMAS J. GOSSETT, JUDGE PRESIDING






M E M O R A N D U M O P I N I O N



A jury found appellant Zachery Quinn Bacon guilty of possessing four grams or more
of methamphetamine with intent to deliver and assessed punishment at forty years' imprisonment. 
See Tex. Health & Safety Code Ann. § 481.112(a), (d) (West 2010). Appellant's only contention
is that his trial counsel was ineffective. We overrule this contention and affirm the conviction.

At 3:30 a.m. on January 22, 2009, San Angelo police officer Harold Caston responded
to a report of a vehicle parked in the roadway. Caston testified that appellant was alone in the car,
asleep. The officer-trainee with Caston drew his attention to a gun in the passenger seat. Caston also
noticed a black bag that resembled a gun case at appellant's feet and cash in appellant's lap. Caston
woke appellant and asked him for identification. Appellant showed the officer an "offender card." 
Caston ordered appellant out of the car, then he opened the black bag to see if there were any more
weapons. Inside the bag, Caston found scales, plastic bags, and what proved to be eighteen grams
of methamphetamine. The cash in the car totaled just over $1000.

To prevail on a claim of ineffective assistance of counsel, a defendant must show by
a preponderance of the evidence that counsel made such serious errors that he was not functioning
effectively as counsel and that these errors prejudiced the appellant's defense to such a degree that
he was deprived of a fair trial. Strickland v. Washington, 466 U.S. 668, 687 (1984); Perez v. State,
310 S.W.3d 890, 892-93 (Tex. Crim. App. 2010). To satisfy the first, performance component, the
defendant must overcome a strong presumption that counsel's conduct fell within the wide range of
reasonable professional assistance. Strickland, 466 U.S. at 688; Perez, 310 S.W.3d at 893. To
satisfy the second, prejudice component, the defendant must show that, but for counsel's deficient
performance, the result of the trial would have been different. Strickland, 466 U.S. at 694; Perez,
310 S.W.3d at 893.

Appellant alleges that his trial counsel's performance was deficient in eighteen
respects. These deficiencies must be affirmatively demonstrated in the record. Mallett v. State,
65 S.W.3d 59, 63 (Tex. Crim. App. 2001). Such a demonstration is hard to make when, as here, the
ineffective assistance issue is raised for the first time on appeal, and counsel has not had an
opportunity to explain his actions and decisions. Id. We will address each alleged deficiency in turn.


1. Improper statement during voir dire 


Appellant contends that his attorney should have objected when the trial court
misstated one of the qualifications for jury service during his comments to the jury panel. In
explaining that to be eligible for jury service, one must not be "under indictment or other legal
accusation for misdemeanor theft or a felony," the court stated:


You cannot presently be under legal accusation, that means an indictment, for
a felony case, or a criminal complaint has been filed in a misdemeanor case against
you, but it must be for felony theft--You must be under indictment for felony theft
or a criminal complaint for misdemeanor theft. So it you are presently under a legal
accusation for a theft charge, then you are not qualified to serve on a jury.



See Tex. Gov't Code Ann. § 62.102 (West Supp. 2009). Although this explanation may have been
confusing, it was not incorrect. The court told the panelists that they must not be under indictment
for a felony or legally accused of a theft of any degree. There was no basis for an objection, and
appellant does not contend that he was adversely affected by the court's statement.


2. Statement by venire member

During voir dire, the prosecutor asked the panelists if any of them had positive or
negative feelings toward law enforcement. One panelist responded, "My brother is a trooper and I
have a nephew who is a trooper and they are just, you know, dealing with this all the time, and that's
one of the hazards that they have to deal with, and one of the dangers is dealing with drugs and
stopping people and their reactions and that type thing." Appellant contends that his attorney should
have stopped this "inflammatory diatribe." Appellant does not explain how his attorney could have
stopped the venire member from speaking. In any event, counsel could reasonably believe that in
order to avoid offending the potential jurors, it was best not to interrupt the panelist.



3. Telling the panel appellant would testify

Defense counsel told the jurors during voir dire, "It is our intent at this moment that
[appellant] will testify." Later, during trial and outside the jury's presence, counsel told the court,
"I have discussed with my client and he is not going to testify." Appellant complains that his
attorney should not have suggested to the jurors that he was going to testify unless he was sure of it.

With the benefit of hindsight, it may have been ill-advised for counsel to suggest to
the jury that appellant would testify. But it may be that appellant had told counsel that he intended
to testify and only changed his mind after trial began. On this record, it cannot be said that counsel
clearly erred.


4. Referring to appellant as "the bad guy"

After telling the jury panel that appellant might testify, counsel went on to say, "He
is the accused. He is the bad guy in the courtroom. Is there anybody that would not be able . . . to
give a fair hearing to his testimony because he is the accused?" Appellant asserts that there was no
justification for this "reckless language." In its brief, the State responds, "The record does not reflect
trial counsel's affable, gregarious manner when he made the tongue-in-cheek comment about his
youthful-appearing, clean-cut, nicely-dressed client being the 'bad guy.'" The State adds that
"counsel's demeanor and terminology had members of the venire smiling at the appellant and trial
counsel." Although we have no way of confirming the State's observations, we must presume that
counsel used the term "bad guy" figuratively, not literally.



5. Inadequate voir dire

Appellant complains that defense counsel's voir dire of the jury panel was
short--seven pages in the reporter's record--rambling, and disorganized. He complains that counsel
spoke to only two panelists individually. He characterizes counsel's voir dire as "a disgrace."

We have no record to explain why appellant's lawyer conducted his voir dire as he
did. We do know that he had the advantage of following the prosecutor's thorough voir dire. It may
be that counsel reasonably believed that he had all information he needed to exercise his strikes, and
that his brief voir dire was a considered attempt to avoid trying the jury's patience.


6. Failure to strike

Appellant complains that two panelists with connections to law enforcement served
on the jury after his attorney failed to strike them. (1) Appellant asserts that no trial strategy could
justify leaving these panelists on the jury, but we disagree. We must presume that counsel used
reasonable professional judgment in exercising his strikes, and that he considered the two panelists
in question to be more acceptable to the defense than those he struck. Appellant makes no attempt
to show that this was not the case.


7. Prosecutor's opening statement

During her opening remarks at the guilt-innocence stage, the prosecutor told the
jurors, "You won't be hearing from me at this phase of trial if this man has ever done anything
wrong before. . . . So, it's my duty and responsibility to bring evidence to you about this allegation,
but you won't hear anything about any other types of crimes, so don't expect that." Appellant urges
that his lawyer should have objected to this statement, which essentially told the jury that he had
previous convictions. Counsel might have believed, however, that an objection would draw more
attention to the prosecutor's remark and confirm its implication.


8. Hearsay

Appellant contends that his attorney should have voiced a hearsay objection when
Caston testified that the trainee "signaled to me that there was a gun in the passenger seat." 
Assuming that this testimony was hearsay, counsel could have reasonably believed that it was
admissible as a present sense impression. See Tex. R. Evid. 803(1).


9. "Offender card"

Appellant complains of his attorney's failure to object when Caston testified that
appellant identified himself with an "offender card." We must again presume on this record that
there was a reasonable basis for counsel's failure to object. As before, counsel may have believed
that an objection would simply draw the jury's attention to the officer's remark.


10. Pornography

During his cross-examination of Caston, defense counsel inquired as to what other
items were found inside the car. The officer replied that, among other things, there were "DVDs
from a porn shop" in the back seat. Appellant contends that by asking this question, his attorney
invited this extraneous bad-conduct testimony and demonstrated that he was unfamiliar with the facts
of the case.

We agree with appellant that it is difficult to justify counsel's asking such an
open-ended question if he was aware of the contents of the vehicle inventory. This also led to
additional prejudicial testimony, as we will discuss below.


11. Narrative question

During her redirect questioning, the prosecutor asked Caston, "[I]s there any more
information that the jury should be aware of when they are making their decision?" Appellant
contends that his attorney should have objected that this question called for a narrative answer. The
State responds that, strictly speaking, the question could be answered yes or no. We conclude that
the form of the question itself is less significant than the officer's answer, which is the next item.


12. Extraneous burglary

In response to the prosecutor's inquiry as to "any more information that the jury
should be aware of," Caston testified that the videos in the car had come from a porn shop that had
recently been burglarized. He added that the number of videos suggested that "somebody is just not
renting them for the night." Although defense counsel voiced no objection to this testimony, the trial
court interrupted the officer and removed the jury. The court asked the prosecutor if the State had
given notice of this extraneous offense. She replied that it had not. The court then admonished both
the prosecutor and the witness to stop "trying to throw in every reference you [can] to every possible
offense this man has been involved in." The court added, "[L]et's try him for what he is charged
with rather than what might have happened out there that night."

Once again, it is difficult to conceive of a sound reason for defense counsel's failure
to object to this extraneous-offense testimony. But assuming that defense counsel's performance
was deficient in first adducing the testimony regarding the pornographic videos and then in failing
to object to the testimony regarding the extraneous burglary, appellant has not shown that these
deficiencies denied him a fair trial. The court admonished the jury not to consider the officer's
testimony regarding the burglary, and the court's charge instructed the jury not to consider evidence
of other crimes as evidence of appellant's guilt. We must assume that the jury heeded these
admonishments. We must also take into consideration the circumstances under which appellant was
found in possession of the methamphetamine. We are satisfied that the outcome of the trial would
not have been different if counsel had been more alert to exclude the extraneous-offense evidence.


13. Opinion testimony

Narcotics officer Bill Mabe testified that based on his training and experience, the
evidence in this case--the quantity of methamphetamine in appellant's possession, the scales, and
the plastic bags--suggested that the methamphetamine was being possessed for sale. Appellant
contends that his lawyer should have objected to this testimony, although he admits that the objection
would have been overruled. We cannot fault counsel for failing to make a baseless objection.


14. Lack of employment

Appellant contends that his counsel should have objected when the prosecutor asked
Mabe if he had been able to determine if appellant had "any legitimate employment." Mabe
answered, "Not that I know of." We note, however, that during cross-examination by appellant's
attorney, Mabe conceded that he had not investigated appellant's employment status and
acknowledged that as far as he knew, appellant might have been employed. The record does not
clearly demonstrate deficient performance by appellant's attorney in this regard.


15. Purpose of gunAppellant complains of his lawyer's failure to object when Mabe testified that "in a
narcotics setting," a firearm "is there for protection" from other drug dealers and "for protection or
use against law enforcement." We doubt that Mabe's testimony, if objectionable, told the jury
anything they did not already know. We are satisfied that the admission of the testimony did not
affect the outcome of the trial. (2)


16. Jury argument

Appellant urges that his lawyer should have objected when, during argument at the
guilt stage, the prosecutor commented on appellant's failure to testify. The prosecutor said, "There
was no testimony from the Defendant. That is his right. We talked about it in Voir Dire. We are
all entitled to that. Nobody has to present evidence in their behalf. . . . [S]o please just consider the
evidence that you do have and not the evidence that you don't have. Please don't even discuss that
issue when you are engaging in your deliberations."

Although the prosecutor plainly referred to appellant's failure to testify, it is apparent
that she was discussing the court's charge, which included an admonition not to consider appellant's
failure to testify as evidence of guilt. Far from suggesting that the jury should infer guilt from
appellant's silence, the prosecutor urged the jury not to do so and to confine their deliberations to
the evidence presented. Under the circumstances, defense counsel could have reasonably concluded
that the prosecutor's remarks did not warrant an objection.


17. Absence of motions

Appellant complains that his attorney did not file any pretrial discovery motions. In
the absence of any showing to the contrary, however, we must presume that such motions were
not needed.


18. Failure to prepare

Appellant asserts, "When considered as a whole, the record supports the inferential
conclusion that [defense] counsel failed entirely to properly investigate--to acquaint himself with
the facts, and prepare a defense." To support this assertion, appellant points to defense counsel's
statement to the court at the end of the first day of testimony that he intended to introduce all or part
of the patrol car video of appellant's arrest. The following day, however, the defense rested without
offering evidence. From this, appellant would have the Court infer that his attorney had watched the
video for the first time overnight, and had only then realized that the video would not benefit the
defense. Appellant also draws attention to the trial court's remark to defense counsel, "Well, there
are lots of things that you should have done that I have kind of done for you here."

We have no evidence as to why appellant's attorney changed his mind about offering
the video. We cannot merely assume that counsel had neglected to watch the video before trial
began, and we must presume that the decision not to offer the video was an exercise of reasonable
professional judgment. The trial court's comment about the things counsel should have done came
during the charge conference and referred to the court having included an instruction on the lesser
included offense of simple possession on its own motion.

Appellant's trial counsel may not have rendered perfect assistance, but appellant has
not met his burden of clearly demonstrating from the record that counsel's performance was outside
the broad range of reasonable professional assistance. The most serious matter raised by appellant,
counsel's failure to object to the extraneous-offense evidence, has not been shown to have affected
the outcome of the trial. The point of error is overruled.

The judgment of conviction is affirmed.



 ___________________________________________

 J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Puryear and Pemberton

Affirmed

Filed: August 19, 2010

Do Not Publish
1. There were seven panelists with law enforcement relationships. Of the others, one was struck
for cause, two were peremptorily struck by defense counsel, and the others were outside the strike
zone.
2. The State asserts that the testimony was relevant to prove the allegation that appellant used a
deadly weapon during the commission of the offense, but this issue was not submitted to the jury at
the guilt stage.