# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-11-00424-CR

**Royal Ronson Davis, Sr., Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF BELL COUNTY, 264TH JUDICIAL DISTRICT
### NO. 67564, HONORABLE MARTHA J. TRUDO, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Royal Ronson Davis was convicted by a jury of aggravated assault by threat with a deadly weapon. *See* Tex. Penal Code Ann. §§ 22.01(a)(2), .02(a)(2) (West 2011). The trial court sentenced Davis to fifteen years' imprisonment. On appeal, Davis claims that he received ineffective assistance of counsel. Davis also seeks a modification of the final written judgment, arguing that the judgment improperly contained (1) an order to pay court-appointed attorney's fees despite the trial court's finding that Davis is indigent, and (2) an order to pay restitution when the trial court's oral pronouncement of sentence stated that restitution was not warranted. We modify the judgment as it pertains to the payment of attorney's fees and restitution and affirm the judgment as modified.

## BACKGROUND

On January 12, 2010, Larry Betts invited his friends Michelle Kurzyniec and Davis to his home for dinner.[1] Kurzyniec accepted the invitation but Davis declined. Kurzyniec and Davis had been in a relationship for six years, and at one point they were engaged to be married. Davis later testified that he had recently "put [Kurzyniec] out," indicating that Kurzyniec's and Davis's relationship had ended or was in the process of ending. When Kurzyniec arrived at Betts's home, she appeared to be emotionally upset.

Approximately one hour after Kurzyniec arrived, Davis knocked on Betts's front door. Betts opened the door, mistakenly believing that it was Betts's godson. Davis entered the home and immediately asked Betts if he knew anyone who would sell him a "40-cent bag" of marijuana. Betts asked Kurzyniec if she wanted Davis to be there, and when she said that she did not, Betts told Davis to leave. Davis became irritated. He walked towards Kurzyniec, began cursing at her and demanded that she come outside. Kurzyniec refused. Betts observed Davis pull back his coat, at which time he saw the handle of a knife protruding from Davis's pocket. Betts became concerned. He went to another room and retrieved his walking cane so that he could "run [Davis] out of the house." Kurzyniec would later testify that Davis drew the knife and threatened her with it.

After Betts returned with his walking cane, Davis left Betts's home, but as he was leaving, he threatened to tell the police that Betts pulled a gun on him. Betts locked the door behind Davis, but Davis began knocking and kicking the door and demanded to be allowed back in. Kurzyniec called 9-1-1.

---

[1] The facts recited herein are taken from testimony and exhibits admitted at trial.

2

Officers with the Killeen Police Department were dispatched to the scene. Dispatch advised the officers that "an ex-boyfriend came into the residence and tried to or [sic] threatened someone with a knife." When the officers arrived on scene, they observed Davis outside of Betts's residence. Having been advised that a suspect was threatening the residence with a knife, the officers unholstered their firearms and demanded that Davis put his hands behind his head. Davis complied, was placed in handcuffs, and an officer asked Davis if he had any weapons on his person. Davis denied having any weapons, and then consented to a "pat-down search." During the search, an officer found a fold-out knife with the blade fully extended in Davis's front pocket. The officer found another knife on Davis's person. Davis became agitated and uncooperative, and officers placed him in the back of a patrol car. Prior to and during his transport to the county jail, Davis told officers that "he was going to come back and finish this" and that "he was going to come back the next day to finish his business." An officer proceeded into the house to take Betts's and Kurzyniec's statements. The officer noted that Kurzyniec was distraught; she was crying and her hands were visibly shaking.

Davis was subsequently arrested and charged with aggravated assault by threat with a deadly weapon, to wit, a knife. *See id.* §§ 22.01(a)(2), .02(a)(2). At trial, the State presented five witnesses, including Kurzyniec, Betts, and three of the police officers who participated in Davis's arrest and the initial investigation. Davis was the only witness to testify for his defense. He denied threatening Kurzyniec with the knife and making the statements to the officers during his arrest. The jury convicted Davis of the offense as charged. The trial court sentenced Davis to fifteen years' imprisonment. This appeal followed.

3

**DISCUSSION**

Davis raises three issues on appeal. In his first and second issues, Davis seeks a modification of the final written judgment to delete the orders requiring him to pay court-appointed attorney's fees and restitution, respectively. In his third issue, Davis claims that he received ineffective assistance of counsel. The State concedes error with respect to Davis's first two issues. For simplicity's sake, we address Davis's ineffective-assistance-of-counsel claim first.

**Ineffective assistance of counsel**

In order to prevail on an ineffective-assistance-of-counsel claim, Davis must satisfy the two-prong test set out in *Strickland v. Washington*. 466 U.S. 668, 687 (1984); *see also Hernandez v. State*, 726 S.W.2d 53, 57 (Tex. Crim. App. 1986) (adopting *Strickland* standard for claims of ineffective assistance of counsel). Under *Strickland*, a defendant must show (1) that the counsel's performance was deficient and (2) that the defendant was prejudiced by the deficient performance. 466 U.S. at 687. Effectiveness is judged by the "totality of the representation," rather than by an isolated act or omission. *See Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). Counsel's performance is deficient when it falls "below an objective standard of reasonableness" based upon "prevailing professional norms." *Id.*; *see also Perez v. State*, 310 S.W.3d 890, 893 (Tex. Crim. App. 2010).

In order to demonstrate prejudice in this case, Davis must show there is a reasonable probability that, but for his counsel's deficient performance, the outcome of his trial would have been different. *See Strickland*, 466 U.S. at 694. A reasonable probability is one sufficient to undermine our confidence in the verdict. *Id.* at 687. Davis has a duty to bring forth a record that affirmatively

4

demonstrates his counsel's alleged ineffectiveness by a preponderance of the evidence. *See Scheanette v. State*, 144 S.W.3d 503, 509-10 (Tex. Crim. App. 2004). Effectiveness of counsel usually cannot be adequately examined based on the record from the trial court in a direct appeal; this type of record is best developed on a motion for new trial. *Id.*

In this case, Davis lists several omissions by his trial counsel that Davis claims constitute deficient performance. Davis notes that his trial counsel did not cross-examine any of the State's witnesses, did not ask any questions of venirepersons during voir dire, did not make an opening statement, and did not invoke "the Rule" to prevent witnesses from being present in the courtroom while other witnesses were testifying. Defense counsel only objected four times during the course of the trial, and only one of these objections was sustained. In his closing argument, Davis's counsel characterized the case as a "he said, she said or they said" despite the fact that he did not impeach the credibility of any of the State's witnesses.

We need not decide whether Davis's counsel was deficient, because Davis has failed to affirmatively demonstrate that he was prejudiced by his counsel's performance. *See Scheanette*, 144 S.W.3d at 509-10 (noting that defendant has burden to bring forth record that affirmatively demonstrates ineffectiveness); *see also Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001) ("[A]n appellant's failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other prong."). In this case, Davis did not file a motion for new trial, and therefore there is no testimony or affidavits to illustrate what facts or evidence his trial counsel could have presented. *See Perez*, 310 S.W.3d at 894 (Tex. Crim. App. 2010) ("[F]ailure to call witnesses . . . is irrelevant absent a showing that such witnesses were available and appellant would benefit from

5

their testimony.") (internal quotations omitted).  For example, Davis has failed to demonstrate in the record what matters his trial counsel could have cross-examined the State's witnesses on that would have benefitted Davis's case.  *See id.*  In his brief, Davis states that "prejudice is apparent from the cumulative nature of the trial counsel's omissions."  However, Davis has failed to produce a record which affirmatively demonstrates that, but for counsel's performance, there is a reasonable probability the outcome of this case would have been different.  *See Strickland*, 466 U.S. at 694.

In this case, the State presented overwhelming evidence that Davis was guilty of assault.  *See Strickland*, 466 U.S. at 696 ("[A] verdict . . . only weakly supported by the record is more likely to have been effected by errors than one with overwhelming record support.").  Both Kurzyniec and Betts provided testimony about the circumstances surrounding the assault.  Kurzyniec and Betts identified the knife that Davis used to threaten Kurzyniec.  This was the same folding knife police found in Davis's pocket with the blade fully extended when Davis was detained outside of Betts's home.  Kurzyniec testified that Davis pulled the knife out of his pocket and threatened her with it.  Betts testified that he saw the knife sticking out of Davis's pocket when Davis pulled back his coat as he was approaching Kurzyniec.  Although Betts did not say that he ever saw Davis remove the knife from his pocket, Betts did say that he became concerned when he saw Davis pull back his coat, prompting Betts to retrieve his walking cane from another room in order to "run [Davis] out of the house."  Thus, Kurzyniec's and Davis's narrations of the assault were generally consistent, and any inconsistency was addressed by Davis's counsel during closing argument.

Furthermore, the State introduced the testimony of three of the police officers who arrested Davis at the scene.  The officers stated that dispatch advised them that an ex-boyfriend had threatened residents with a knife, indicating that Kurzyniec told 9-1-1 that Davis threatened her with

6

a knife immediately after this assault. The officers also testified that, when asked, Davis denied possessing any weapons, even though a subsequent pat-down search revealed that Davis was carrying two knives, one of which was open. Finally, the officers testified that prior to and during his transport to the county jail, Davis threatened to "come back the next day to finish his business" and that the police "wouldn't be able to handle it, just like [they] weren't able to handle it that night." Davis's threats can reasonably be interpreted to be an admission that he threatened Kurzyniec the night of the assault. Davis has failed to explain why any of this testimony could have been excluded. Additionally, there are few facts or evidence in the record that could have been used by Davis's counsel to further impeach the credibility of these witnesses.

In fact, the only evidence in the record that contradicts the State's case is Davis's testimony. Davis denied threatening Kurzyniec or making threatening comments to the police officers. He also testified that Betts threatened him with a gun. However, Betts denied owning a gun. Additionally, after Davis's testimony, the State called one of the investigating officers as a rebuttal witness. The officer testified that he searched Betts's home on the night of the assault in response to Davis's statement that Betts pointed a gun at him. The officer stated that he did not find a gun, bullets, or anything that would indicate that Betts owned a gun. Thus, the officer's and Betts's testimony impeached Davis's credibility.

Therefore, Davis's testimony, standing alone, is not sufficient to undermine our confidence in the verdict. Given that the State produced five witnesses who provided compelling testimony about Davis's guilt, we find that the record does not show a reasonable probability that this verdict would have been different but for Davis's trial counsel's potentially deficient performance. *See id.* Therefore, Davis has failed to show that he was prejudiced by his counsel's

7

performance, and thus he cannot show that his right to effective assistance of counsel has been violated. *Id.* We need not determine whether Davis's counsel was deficient. *See Garcia*, 57 S.W.3d at 440 (noting that if accused fails to establish one prong of *Strickland*, court need not analyze other prong). Davis's third point of error is overruled.

**Attorney's fees**

In his first point of error, Davis claims, and the State agrees, that the evidence is insufficient to support the trial court's order requiring him to pay court-appointed attorney's fees "if able." Article 26.05(g) of the Texas Code of Criminal Procedure governs the assessment of court-appointed attorney's fees. Tex. Code Crim. Proc. Ann. art. 26.05(g) (West Supp. 2010). A trial court's authority to order a defendant to repay the cost of court-appointed counsel depends upon the court's determination that "the defendant has financial resources that enable him to offset in part or in whole the costs of legal services provided." *Id.* Once an accused is found to be indigent, he is presumed to remain so through the proceedings absent proof of a material change in his circumstances. *Id.* art. 26.04(p) (West Supp. 2010). Accordingly, to require a defendant to repay court-appointed attorney's fees, the State must present evidence that the defendant's financial circumstances have materially changed since the court's initial finding of indigence and that the defendant is now capable of paying some or all of those fees. *See Mayer v. State*, 309 S.W.3d 552, 556 (Tex. Crim. App. 2010) ("[T]he defendant's financial resources and ability to pay are explicit critical elements in the trial court's determination of the propriety of ordering reimbursement of costs and fees."). When evidence does not support a court's order to pay attorney's fees, the proper remedy is to delete the order. *Id.* at 557.

The trial court appointed counsel to represent Davis after his arrest, and appointed counsel continued to represent Davis throughout the subsequent trial proceedings. Nevertheless, the judgment adjudicating guilt orders Davis to pay "court costs and attorney fees, if able . . . after release from incarceration." As the State acknowledges, there is nothing in the record indicating that Davis's financial circumstances have changed after the court's appointment of counsel. There is no record that the trial court ever determined that Davis has the ability to pay attorney's fees. Instead, the record shows that two days before the trial court ordered Davis to pay attorney's fees, it appointed counsel to represent Davis on this appeal.

Furthermore, the fact that the ordered payment is conditioned on release and ability to pay in the future does not negate the requirements of article 26.05(g). The possibility that circumstances may change in the future does not prove that Davis presently has the financial ability to pay his attorney's fees. *See Roberts v. State*, 327 S.W.3d 880, 883–84 (Tex. App.—Beaumont 2010, no pet.) (explaining trial court's presumption that defendant might be able to obtain employment in future did not prove defendant presently had ability to pay court-appointed attorney's fees). Having reviewed the record in the light most favorable to the trial court's ruling, we agree with the parties that the evidence is insufficient to support a finding that Davis's financial situation has changed and that he is now capable of paying attorney's fees. We sustain Davis's first point of error.

**Restitution**

In his second point of error, Davis claims, and the State agrees, that the judgment should be modified to delete the order requiring him to pay restitution. An order to pay restitution

is punitive. *See Ex Parte Cavazos*, 203 S.W.3d 333, 338 (Tex. Crim. App. 2006) (noting that court of criminal appeals has "held that restitution is punishment"). Therefore, an order to pay restitution must be pronounced orally if it is to be included in the written judgment. *See* Tex. Code Crim. Proc. Ann. art. 42.03, § 1(a) (West 2006). As the court of criminal appeals has explained, "the judgment, including the sentence assessed, is just the written declaration and embodiment of [the] oral pronouncement. When there is a conflict between the oral pronouncement of sentence and the written judgment, the oral pronouncement controls." *Taylor v. State*, 131 S.W.3d 497, 500 (Tex. Crim. App. 2004).

In this case, the trial court stated during its oral pronouncement of sentence "I didn't hear any testimony regarding restitution so I will not order restitution." However, in its written judgment, the trial court ordered Davis to pay $275 in restitution upon release from incarceration. Given that the oral pronouncement controls, we sustain Davis's second point of error. *See id.* at 500–02.

An appellate court has the power to correct clerical errors in a trial court's judgment if the appellate court has the information necessary to do so. Tex. R. App. P. 43.2(b); *French v. State*, 830 S.W.2d 607, 609 (Tex. Crim. App. 1992); *see also Boone v. State*, No. 03-10-00440-CR, 2011 Tex. App. LEXIS 5957, at *1 (Tex. App.—Austin July 28, 2011, no pet.) (mem. op., not designated for publication) (modifying judgment by deleting attorney's fees before affirming conviction). In this case, having sustained Davis's first and second points of error, we modify the trial court's judgment adjudicating guilt to delete the orders that Davis pay $1,295 in attorney's fees and $275 in restitution.

10

**CONCLUSION**

We affirm the judgment of the trial court as modified.

_____

Diane M. Henson, Justice

Before Chief Justice Jones, Justices Pemberton and Henson

Modified and, as Modified, Affirmed

Filed:   August 8, 2012

Do Not Publish

11