# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-09-00489-CR

**Roberto Arredondo, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 368TH JUDICIAL DISTRICT NO. 08-1590-K368, HONORABLE BURT CARNES, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury found appellant Roberto Arredondo guilty of two counts of aggravated sexual assault of a child and assessed punishment for each count at sixty years' imprisonment. *See* Tex. Penal Code Ann. § 22.021 (West Supp. 2010). Appellant contends that the evidence is legally and factually insufficient to support the guilty verdict as to one of the counts. He also contends that the trial court erred by permitting multiple outcry witnesses to testify and by admitting victim impact testimony during the guilt-innocence stage. Finally, appellant contends that he did not receive effective assistance of counsel. We overrule these contentions and affirm the convictions.

The complainants, K.B. and F.B., were the ten-year-old twin great-granddaughters of appellant's common-law wife. The complainants lived with their mother in Austin, and they often visited their great-grandmother and appellant, who they called "Popo," at their home in Georgetown. K.B. testified that, during one of these visits, she was in the kitchen playing with one of her

great-grandmother's dogs when appellant "touched me underneath my panties, my shorts, and he stuck his hand in there." She said that it "felt wrong" and "hurt." When asked if appellant touched her on the "outside" or the "inside," K.B. replied, "It was a little bit of both," and "He touched me on the inside." F.B. testified that she was laying on her great-grandmother's bed watching television when appellant touched her "cookie," which the evidence shows was a reference to her genitals. She said that appellant's hand went "all the way through my panty" to the "inside" of her cookie, and that it hurt.

The complainants' grandmother, Geneva B., also lived in Austin and often watched the complainants while their mother, her daughter, worked. Geneva testified that K.B. told her on the night of October 8, 2008, that "her popo had touched her cookie." She continued, "They were in the kitchen. And she had one of the puppies wrapped in a blanket, and she was trying to show him. And he put his hands inside her panty, and he pinched her." K.B. told Geneva that F.B. and her great-grandmother were in the living room when this happened. Geneva testified that she immediately asked F.B. "if that happened to her too, and she said, yes, ma'am," but that F.B. did not go into detail. The next morning, Geneva told her daughter what the girls had said.

Raven B., the complainants' mother, testified that F.B. told her that "her popo put his finger—put his hand down her panties, and then he put his finger inside of her. She said that she started to cry, and she told him, 'No, popo. Stop.' She said that she cried a little bit, and he finally . . . stopped. Then she said that he hurt her really bad." F.B. told Raven that this happened on the bed in her great-grandmother's house while K.B. and her great-grandmother were in the living room.

2

Raven contacted the police, and the girls were subsequently taken to the Williamson County Children's Advocacy Center to be interviewed and examined. Evangeline Barefoot, the sexual assault nurse examiner, testified that K.B. told her, "My popo touched me in my private place." K.B. said that this happened in the kitchen while she was holding a puppy. Barefoot testified that F.B. told her, "My popo touched me here," pointing to her genital area. Barefoot further testified that she found no evidence of physical trauma during her physical examinations of the two girls.

Count one of the indictment alleged that on or about August 18, 2008, appellant penetrated K.B.'s sexual organ with his finger. Count two alleged that appellant engaged in the same conduct with F.B. on or about August 20, 2008. Appellant contends that the evidence does not support the jury's finding that he penetrated K.B.'s sexual organ with his finger as alleged in count one.

When there is a challenge to the sufficiency of the evidence to sustain a criminal conviction, the question presented is whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 324 (1979); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007); *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000). All the evidence is reviewed in the light most favorable to the verdict; it is assumed that the trier of fact resolved conflicts in the testimony, weighed the evidence, and drew reasonable inferences in a manner that supports the verdict. *Clayton*, 234 S.W.3d at 778. The court of criminal appeals recently announced that the *Jackson* standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to prove the

3

defendant's guilt beyond a reasonable doubt. *Brooks v. State*, No. PD-0210-09, 2010 Tex. Crim. App. LEXIS 1240, at *57 (Tex. Crim. App. Oct. 6, 2010).

In *Brooks*, the court of criminal appeals overruled all opinions holding that there is a second, factual sufficiency standard for determining the sufficiency of the evidence. *Id*. Nevertheless, because the time for filing a motion for rehearing in *Brooks* has not expired, we will address appellant's factual sufficiency contention. Under factual sufficiency analysis, all the evidence is considered equally, including the testimony of defense witnesses and the existence of alternative hypotheses. *Clewis v. State*, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996); *Orona v. State*, 836 S.W.2d 319, 321 (Tex. App.—Austin 1992, no pet.). Although due deference still must be accorded the fact finder's determinations, particularly those concerning the weight and credibility of the evidence, the reviewing court may disagree with the result in order to prevent a manifest injustice. *Johnson*, 23 S.W.3d at 9; *Cain v. State*, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997). The evidence will be deemed factually insufficient if the evidence supporting the verdict is so weak as to make the finding of guilt clearly wrong or manifestly unjust, or if the verdict is against the great weight and preponderance of the available evidence. *Watson v. State*, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006); *Johnson*, 23 S.W.3d at 11.

Appellant introduced no defensive evidence at the guilt-innocence stage, and he bases both his legal and factual sufficiency challenges on the assertion that there was no express testimony that he penetrated K.B. with his finger. It is true that Geneva B.'s outcry testimony did not mention penetration. K.B. testified, however, that appellant put his hand "underneath [her] panties" and "stuck his hand in there." K.B. also testified that appellant touched her "on the inside," and that it

4

hurt. In addition, the SANE nurse testified that K.B. told her that appellant "touched [her] in [her] private place." Viewing this and all the other evidence in the light most favorable to the verdict, a rational trier of fact could find beyond a reasonable doubt that appellant's finger penetrated K.B.'s sexual organ. Viewing all the evidence in a neutral light, the jury's verdict was not manifestly unjust or against the great weight of the available evidence. Issue three is overruled.

Appellant contends that the trial court erred by permitting two witnesses to testify to F.B.'s outcry. Under a statutory exception to the hearsay rule, the first adult other than the defendant to whom a child makes a statement describing a sexual assault may testify to this outcry. Tex. Code Crim. Proc. Ann. art. 38.072 (West Supp. 2010). An outcry statement within the scope of the statute "must be more than words that give a general allusion that something in the area of child abuse was going on." *Garcia v. State*, 792 S.W.2d 88, 91 (Tex. Crim. App. 1990). The proper outcry witness is not necessarily the first adult to whom the child spoke about the abuse, but is instead the first adult to whom the child described the abuse in some discernable detail. *Id.*

Raven B., the child's mother, was the State's designated outcry witness for F.B. *See* Tex. Code Crim. Proc. Ann. art. 38.072 § 2(b).[1] Appellant contends that before making her outcry to Raven, F.B. had already made an outcry to her grandmother, Geneva B. As previously noted, Geneva testified that after K.B. made her outcry, F.B. told Geneva that the same thing had happened to her. Geneva also said that she and the complainants "talked about it through the night, and then I told my daughter in the morning." But Geneva also testified that F.B. did not go into any detail,

---

[1] Appellant asserts in his brief that the State did not give the required notice, but this assertion is contradicted by the record.

and there is no evidence that F.B.'s statements to her grandmother were more than general allusions to abuse.

Appellant argues that F.B. also may have made an earlier outcry to her aunt, Rosemary B. F.B. testified that she called "Tia Mary" from her grandmother's house to tell her what had happened, but F.B. could not remember the day this call had been made. Rosemary testified, however, that F.B. never spoke to her about the abuse. Even if the record were deemed sufficient to show that F.B. spoke to Rosemary before speaking to Raven, there is no evidence that F.B. described the abuse to Rosemary in any significant detail.

On this record, the trial court did not abuse its discretion by concluding that Raven B. was the first adult to whom F.B. made an outcry statement within the meaning of article 38.072. Appellant's contention that the court allowed more than one outcry witness for F.B. is without merit. Issue two is overruled.

Appellant's next contention is that the trial court abused its discretion during the guilt-innocence stage by allowing Raven B. to testify that F.B. had experienced approximately twelve episodes of urinary incontinence at school. He also complains of Raven's testimony that both complainants had been "upset" when they underwent sexual assault examinations. Appellant contends that this was "victim impact" testimony that may have been admissible at the punishment stage, but was irrelevant to the issue of guilt. *See* Tex. R. Evid. 401 (defining "relevant evidence" as evidence having any tendency to make the existence of a fact of consequence more or less probable).

Appellant relies on the opinion in *Brown v. State*, 757 S.W.2d 739 (Tex. Crim. App. 1988). In that sexual assault prosecution, the trial court admitted evidence at the guilt-innocence

6

stage regarding the complainant's emotional trauma arising from the assault, including two suicide attempts. *Id*. at 740. The court of appeals had found no error, reasoning that the evidence was admissible to show that the complainant had not consented to the act of sexual intercourse. *Id*. The court of criminal appeals noted, however, that consent was not an issue in the case. *Id*. The defendant did not deny that the complainant had been sexually assaulted, but he denied being the assailant and presented an alibi witness who testified that he had been with her when the assault was committed. *Id*. The court concluded that under the circumstances, the challenged evidence was irrelevant to any consequential fact at the guilt stage. *Id*. at 740-41.

In the present case, penetration of the complainants as alleged in the indictments was a fact of consequence to the prosecution. As appellant acknowledges in his brief, his defense at trial was based on the absence of physical evidence of penetration and the assertion that the complainants could not be believed beyond a reasonable doubt because there were inconsistencies in their statements. Under the circumstances, evidence tending to corroborate the complainants' accusations was relevant. The SANE nurse testified that sexually abused children can display a variety of symptoms, including nightmares, bed wetting, and anxiety. Raven's testimony describing F.B.'s incontinence since making her outcry tended to corroborate F.B.'s accusations and made the existence of the alleged penetration more probable. The trial court did not abuse its discretion by admitting this evidence over appellant's objection that it was irrelevant to his guilt.

The State argues that Raven's testimony that the complainants had been upset by the sexual assault examination was also corroborative, reasoning that the complainants' willingness to endure an upsetting pelvic examination without withdrawing their accusations tends to show that

those accusations were true. But even if the court abused its discretion by admitting this testimony, it did not affect appellant's substantial rights. *See* Tex. R. App. P. 44.2(b). The SANE nurse described the examination process in detail. Even without Raven's testimony, the jurors would likely have understood that ten-year-old girls would find such an examination to be an unpleasant and upsetting experience. One of the prosecutors referred to this testimony during final argument ("And thanks to their story and them coming out, they're rewarded with a pelvic exam. Thank you, Mr. Arredondo, for being a result [*sic*] of that."), but without objection. We conclude that the admission of evidence that the complainants had been upset by the sexual assault examination, if error, had little or no effect on the finding of guilt. Issue one is overruled.

Finally, appellant contends that his trial counsel rendered ineffective assistance by withdrawing his objection to the introduction of the complainants' videotaped statements. The complainants were interviewed at the children's advocacy center by Erin White, a counselor and forensic interviewer. During her direct examination, White described the manner in which she conducted the interviews and stated, without further elaboration, that both girls made an outcry. During cross-examination, defense counsel questioned White in more detail. White acknowledged to counsel that K.B. had made inconsistent statements regarding the number of abusive incidents. White indicated that she made no effort to follow-up the interviews to determine the truth of the complainants' statements or if they were consistent with the complainants' statements to others. During the course of the cross-examination, counsel asked White to watch the video of F.B.'s interview to refresh her memory about a detail.

After defense counsel concluded his cross-examination of White, the State offered in evidence the video recordings of White's interviews. Defense counsel objected that the recordings were hearsay. The State responded that the interviews were prior consistent statements by the complainants being offered to rebut the implied charge of recent fabrication or improper influence or motive. *See* Tex. R. Evid. 801(e)(1)(B). Asked by the court to respond, defense counsel withdrew his objection. The videotaped interviews were thereafter shown to the jury with the limiting instruction that they were offered "to show a prior consistent statement and not for the truth of the matter stated."

To prevail on a claim of ineffective assistance of counsel, a defendant must show by a preponderance of the evidence that counsel made such serious errors that he was not functioning effectively as counsel and that these errors prejudiced the appellant's defense to such a degree that he was deprived of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Perez v. State*, 310 S.W.3d 890, 892-93 (Tex. Crim. App. 2010). To satisfy the first, performance component of *Strickland*, the defendant must overcome a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 688; *Perez*, 310 S.W.3d at 893. Any allegation of defective representation must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Mallett v. State*, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001). In most cases, the record on direct appeal is undeveloped and cannot adequately reflect the motives behind trial counsel's actions. *Id*. To satisfy the second, prejudice component of *Strickland*, the defendant must show that, but for counsel's deficient performance, the result of the trial would have been different. *Strickland*, 466 U.S. at 694; *Perez*, 310 S.W.3d at 893.

9

Appellant implicitly asserts that his trial counsel mistakenly concluded that the recorded interviews were admissible. We agree that the exhibits were not admissible on the ground urged by the State at trial. For rule 801(e)(1)(B) to apply: (1) the declarant must testify at trial and be subject to cross-examination; (2) the opponent must expressly or impliedly charge recent fabrication or improper influence or motive regarding the declarant's testimony; (3) the proponent must offer a prior statement that is consistent with the declarant's in-court testimony; and (4) the prior consistent statement must have been made prior to the time that the supposed motive to falsify arose. *Hammons v. State*, 239 S.W.3d 798, 804 (Tex. Crim. App. 2007). Insofar as appellant impliedly accused the complainants of fabrication, the charge related to their original outcries and not merely to their trial testimony. The videotaped interviews at the children's advocacy center were conducted after the complainants made their outcries and thus after any motive to falsify arose.[2]

Appellant did not allege ineffective assistance in his motion for new trial. Thus, the record before us is silent regarding the motivations underlying trial counsel's decision to withdraw his objection to the proffered videos. In most cases, a silent record will not overcome the presumption that counsel's actions fell within the wide range of reasonable professional assistance. *Mallett*, 65 S.W.3d at 63. Further, the record in this case suggests that defense counsel may have made a considered tactical decision. After the recorded interviews were shown to the jury, counsel took the opportunity to further cross-examine White regarding what counsel asserted were

---

[2] The State argues that even if rule 801(e)(1)(B) did not apply, the statements were nevertheless admissible under the rule of optional completeness. Tex. R. Evid. 107; *see Tovar v. State*, 221 S.W.3d 185, 191-92 (Tex. App.—Houston [1st Dist.] 2006, no pet.). We express no opinion on this argument.

inconsistencies in the complainants' statements in the videos and the possibility that the complainants were either lying or mistaken, and to suggest that White may have prompted F.B. to say that she had been penetrated. The record does not exclude the possibility that appellant's counsel withdrew his objection to the exhibits because he believed that their admission would be, overall, more beneficial than harmful to the defense.

Appellant has not satisfied his burden of demonstrating by a preponderance of the evidence that his trial counsel did not function effectively. Issue four is overruled.

The judgments of conviction are affirmed.

_____

Jan P. Patterson, Justice

Before Justices Patterson, Pemberton and Henson

Affirmed

Filed: October 19, 2010

Do Not Publish

11