Court of Appeals
Fourth Court of Appeals District of Texas
San Antonio




# MEMORANDUM OPINION

No. 04-10-00673-CR

Candido **TORRES**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 144th Judicial District Court, Bexar County, Texas
Trial Court No. 2006-CR-2552
Honorable Catherine Torres-Stahl, Judge Presiding

Opinion by:    Phylis J. Speedlin, Justice

Sitting:      Catherine Stone, Chief Justice
            Phylis J. Speedlin, Justice
            Rebecca Simmons, Justice

Delivered and Filed:   August 17, 2011

AFFIRMED

Candido Torres appeals his conviction for burglary of a habitation, asserting the evidence is legally insufficient to prove identity and his counsel rendered ineffective assistance. We affirm the trial court's judgment.

## BACKGROUND

In August 2005, appellant Candido Torres and his girlfriend moved into an apartment leased by Torres' nephew, Javier Garza, and his wife, Esther Medrano. An agreement was made

that Torres and his girlfriend could live there and pay reduced rent and a share of the bills in exchange for watching Garza's and Medrano's two children while they were at work. Medrano knew Torres for several years because he was her husband's uncle and he visited often; she considered him part of her family. After a couple of months of this living arrangement, Torres began to make comments and sexual advances that made Medrano feel uncomfortable, such as touching her breasts underwater in the pool, touching her buttocks as he passed by while she was cooking, and saying she was pretty and he "wanted to be with" her. At first, Medrano did not tell her husband because she did not want to cause problems; she tried to avoid being around Torres. When the situation continued, Medrano told her husband she "no longer thought it was a good idea" for Torres and his girlfriend to live with them because his "flirting" made her uncomfortable. Medrano did not know whether her husband said anything to Torres about her concerns. Finally, when Torres remained, Medrano informed the manager of her apartment complex that Torres and his girlfriend were not on the lease but were living with them in an effort to have them kicked out; she did not tell her husband she did that. Management left a letter at the apartment warning that Torres and his girlfriend must vacate within 24 hours or the entire family would be evicted. Torres and his girlfriend moved out that evening and returned the apartment key to them. Medrano said that Torres was upset and wanted the rent money back for the month.

One or two days later, on October 5, 2005, Medrano was alone in the apartment napping before her midnight shift. She awoke when the bedroom light was turned on. She saw Torres standing there in her bedroom; his face was not covered. He came toward her quickly and covered her mouth, telling her not to make any noise. Torres unzipped his pants and tried to force his penis into her mouth. Torres said he wanted to "make love" to her; he straddled her and

began touching her breasts. When she struggled, he hit her on the forehead, mouth, neck and sides. Torres ripped Medrano's shirt and she hit her head against the wall. Eventually, Torres got aggravated, gave up, and left, knocking down pictures and a shelf as he left through the front door. He threatened that if Medrano told anyone, he would "give [her] first son back to his dad." The threat scared her because Torres was friends with her ex-husband, and he sometimes watched her kids. Medrano went to a neighbor's home and called her husband at work, telling him that Torres had broken into the apartment and hit her; she later told him in person about the attempted sexual assault. When Garza arrived home, he found Medrano hiding in the closet under a blanket; she was crying, her shirt was torn, and she had a bloody lip, a bump on her forehead and redness over her left eye. Garza called the police, even though Medrano did not want him to call. The officer and paramedic who responded both observed that Medrano's shirt was torn, and she had fresh injuries to her face consisting of a bruised bump on her forehead, a bloody lip, and redness and swelling above her left eye; she was visibly upset and crying. Her injuries were documented in photographs. Medrano told the officer and paramedic that Torres had broken in to her apartment and assaulted her while attempting to sexually assault her. Medrano gave the officer Torres' full name and physical description.

Torres was charged with burglary of a habitation with intent to commit, or commission of, assault. At trial, the State's case consisted of the testimony of Medrano, the responding officer and paramedic, and the detective who took Medrano's statement, all of whom testified as set forth above. Torres testified in his defense, stating that Medrano was lying about everything and that he was at his friend Eric Garza's apartment, along with Garza's wife and kids, on the night of the offense and did not have access to a car. Torres stated he had lost contact with all of these potential alibi witnesses; none of them testified at trial. Garza, who was divorced from

Medrano at the time of trial, also testified for the defense.[1] He conceded that he saw Medrano's injuries and torn shirt that night, and stated that she "looked like someone that had been physically assaulted." However, Garza testified that he started to doubt Medrano's accusations against Torres about two months after the incident when she disappeared for a week after they had an argument. Garza stated that Medrano told "numerous lies" about her disappearance, and he found a letter in Medrano's handwriting saying she had been kidnapped. Garza further testified he later found out that Medrano had spent that week with a man with whom she was having an affair. At the time of trial, Garza had been living in the same house as Torres for one and a half years. With respect to her one-week disappearance in 2005, Medrano testified on rebuttal that she left for a week because Garza had become physically abusive during an argument; she stayed with her ex-husband. Medrano denied writing a letter saying she was kidnapped. The jury convicted Torres, and he was sentenced to five years imprisonment plus a $1,500 fine. Torres now appeals.

## ANALYSIS

### *Legal Sufficiency*

In his first issue, Torres contends the evidence is legally insufficient to prove his identity as the person who entered the residence and assaulted Medrano. Under the legal sufficiency standard, we review all the evidence and reasonable inferences in the light most favorable to the jury's verdict, and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). It is the jury's role to resolve conflicts in the testimony, assess credibility and weigh the evidence, and draw reasonable

---

[1] Garza and Medrano stayed together after the 2005 incident and had a child together in 2007 before breaking up in 2008.

inferences from the basic facts to the ultimate facts. *Brooks*, 323 S.W.3d at 899. In conducting a legal sufficiency review, we defer to the jury's assessment of the credibility of the witnesses and the weight to be given to their testimony. *Id.* The appellate court may not substitute its own judgment for that of the jury. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). Further, we must resolve any inconsistencies in the evidence in favor of the jury's verdict. *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).

In order to convict Torres of burglary of a habitation–assault as charged in the indictment, the State had to prove that Torres intentionally and knowingly entered the habitation without the consent of the owner, and attempted and did commit an assault, or alternatively had the intent to commit an assault. *See* TEX. PENAL CODE ANN. § 30.02(a)(1), (3) (West 2011). Torres concedes there is sufficient evidence to prove that someone entered the habitation and physically assaulted Medrano. However, Torres contends the evidence is legally insufficient to prove he was the perpetrator because he testified to an alibi and denied committing the offense, and because Medrano gave inconsistent testimony. Torres asserts there is a "mere modicum" of evidence to prove his identity as the perpetrator, and that quantum of evidence is legally insufficient. *See Padilla v. State*, 326 S.W.3d 195, 200 (Tex. Crim. App. 2010) (citing *Jackson*, 443 U.S. at 319). Specifically, Torres argues Medrano was not credible because there were inconsistencies in her trial testimony and between her testimony and her police statement given five years earlier; he also points to the evidence that he returned the apartment key and the front door was undamaged, the extent of Medrano's physical injuries did not match her description of the assault, and her ex-husband later disbelieved her accusations.

The evidence in support of the jury's finding that Torres was the perpetrator comes solely from Medrano. Torres contends the following inconsistencies between Medrano's trial

testimony and her written statement so undermined her credibility that her testimony is legally insufficient to support the verdict: (i) Medrano told the detective that Torres had lived there "no more than two weeks," but testified at trial he had lived there for two months before the assault; (ii) Medrano told the detective Torres put his "knees on her stomach" during the assault, but at trial stated he "straddled" her; (iii) in testifying that Torres told her he "wanted to be with" her, Medrano did not testify that Torres told her "You don't need to be with him, you need to be with me," which was in her written statement; (iv) in her statement she said she kicked Torres before he hit her, but at trial stated she did not kick or punch Torres; and (v) her statement included Torres' threat, "If you say anything, you're–you're going to get it," but her trial testimony did not include that particular threat. It is the jury's role to resolve any conflicts in the evidence, and to determine whether a witness's credibility is affected by any inconsistencies. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). Further, these inconsistencies do not go to the issue of identity, but rather to the details of the assault. As the State points out, it was uncontested at trial that Medrano knew Torres well based on her prior relationship with him as her husband's uncle, thus supporting an inference that she would not mistake someone else for Torres. Further, Medrano affirmatively and consistently stated that when the light was turned on in her bedroom, she saw that the person who had broken in to her apartment was Torres, and that it was Torres who assaulted her. She never wavered in identifying Torres as the perpetrator—to her neighbor whose phone she used, to her husband, to the responding officer, to the paramedic, and to the detective who took her statement. Even though Torres presented contrary evidence by testifying he had an alibi and was not the perpetrator, no alibi witnesses testified in support of Torres. Therefore, the issue of identity turned on a credibility contest between Medrano and Torres. It was the jury's role to assess the demeanor and credibility of Medrano and Torres, and

to choose who to believe. *Id.* We hold the evidence is legally sufficient to prove Torres' identity as the perpetrator of the offense and overrule his first issue.

### *Ineffective Assistance of Counsel*

In his second issue, Torres asserts his trial counsel rendered ineffective assistance by failing to object to improper cross-examination regarding an extraneous offense that implied Torres had assaulted another family member. Specifically, Torres complains that his counsel did not object during this line of cross-examination of Torres regarding where he was living before he moved in with Medrano and Garza:

> STATE: Isn't it true that you, in fact, were living in your father's home at 535 Porter and something happened at that house. And I'm not asking you what that something was, but something happened which – which required you and your girlfriend to have to leave; is that right?
>
> TORRES: No. We didn't have to leave, we left on our own.
>
> STATE: And this something that – that happened was – was something involving your sister; is that right?
>
> TORRES: Yes.
>
> STATE: Okay. And isn't it true that after that incident involving your sister, you were asked to leave?
>
> TORRES: No.
>
> STATE: You were forced to leave?
>
> TORRES: No. I left because I wanted to leave.
>
> STATE: When you left, was your sister still living there?
>
> TORRES: Yes, sir.
>
> STATE: Okay. So it was better based on this incident for either your sister or you to leave; right ? You agree with me on that; right?
>
> TORRES: Yes.

Torres complains that defense counsel rendered ineffective assistance by not objecting to this line of questioning, contending that the prosecutor's questions suggested that he committed a similar assault against his sister which resulted in him moving out of his father's house. Torres asserts that because his counsel filed a motion in limine on extraneous offenses he must have known of the incident with Torres' sister. Torres also complains that, even though his counsel objected to the prosecutor's later attempt to refresh Torres' memory of the date of the incident by showing him the police report, he did not request a limiting instruction and move for a mistrial.

To establish ineffective assistance, Torres has the burden to prove that his counsel's performance was deficient and that it prejudiced his defense, in that there is a reasonable probability that, absent counsel's errors, the result of the proceeding would have been different. *See Strickland v. Washington*, 466 U.S. 668, 687, 694 (1984); *Perez v. State*, 310 S.W.3d 890, 892-93 (Tex. Crim. App. 2010). Torres must provide a sufficient record that supports his factual allegations of ineffective assistance with proof by a preponderance of the evidence and overcomes the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005); *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). Failure to prove either prong of the *Strickland* test will defeat an ineffective assistance claim. *Perez*, 310 S.W.3d at 893; *Thompson*, 9 S.W.3d at 813.

Assuming without deciding that counsel's performance was deficient, Torres has failed to prove that his defense was prejudiced by the absence of an objection to the questions about an "incident" with his sister. Torres relies on cases holding that admission of extraneous offense evidence is "inherently prejudicial," and when counsel fails to object to numerous extraneous and prejudicial matters it constitutes ineffective assistance. *See Hall v. State*, 161 S.W.3d 142,

154 (Tex. App.—Texarkana 2005, pet. ref'd) (internal citations omitted); *see also Garcia v. State*, 308 S.W.3d 62, 68 (Tex. App.—San Antonio 2009, no pet.) (holding defense counsel was ineffective where he repeatedly elicited or opened the door to otherwise inadmissible extraneous offense evidence that damaged defendant's credibility). Here, however, no evidence of any extraneous offense or misconduct by Torres was admitted as a result of counsel's failure to object. No details about the "incident" with Torres' sister were developed which would support even an inference that it was an assault or sexual assault as opposed to a financial dispute or other dissimilar "incident." The line of questioning that Torres complains of established nothing more than that there was an unspecified "incident" with Torres' sister after which he moved out of his father's house. Moreover, Torres repeatedly denied that he was asked or forced to move out as a result of the incident, asserting that he chose to leave on his own. We conclude Torres has failed to show that any error by his counsel with respect to the "incident" with his sister was so serious that it deprived him of a fair trial, i.e., a trial whose result is reliable. *Perez*, 310 S.W.3d at 893 (citing *Strickland*, 466 U.S. at 687). Accordingly, we overrule Torres' second issue.

Based on the foregoing reasons, we affirm the trial court's judgment.

Phylis J. Speedlin, Justice

DO NOT PUBLISH