PD-0827-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 7/13/2015 12:00:00 AM
Accepted 7/15/2015 3:09:11 PM
ABEL ACOSTA
CLERK

No. PD-0827-15

In the

Court of Criminal Appeals

At Austin

———◆———

## No. 14-14-00091-CR

In the

Court of Appeals

for the

Fourteenth District of Texas

at Houston

———◆———

## No. 1400039

In the 185th District Court

Harris County, Texas

———◆———

# ADRIAN FRANCISCO MIRANDA

*Appellant*

V.

# THE STATE OF TEXAS

*Appellee*

———◆———

APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

FILED IN
COURT OF CRIMINAL APPEALS

July 15, 2015

ABEL ACOSTA, CLERK

MANDY MILLER
Attorney for Adrian Francisco Miranda
State Bar No: 24055561
2910 Commercial Ctr. Blvd., Ste. 103-201
Katy, TX 77494
(832) 900-9884
Fax: (877) 904-6846
mandy@mandymillerlegal.com

ORAL ARGUMENT REQUESTED

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to Texas Rule of Appellate Procedure 68.4(d), appellant requests oral argument. The Fourteenth Court of Appeals erred when it failed to hold that appellant suffered prejudice when his counsel not only elicited testimony that appellant had previously been charged with a sex offense, but that he had also just perjured himself before the jury. The issues raised in this petition are fact specific. Oral argument will aide this Court in answering any questions which may arise.

# IDENTIFICATION OF THE PARTIES

Pursuant to TEX. R. APP. P. 68.4(a), a complete list of the names of all interested parties is provided below.

Counsel for the State:
1201 Franklin, Ste. 600
Houston, TX 77022

**Devon Anderson** — District Attorney of Harris County

**Alan Curry** — Assistant District Attorney on appeal

**Stephen Driver and Kathryn Kahle** — Assistant District Attorneys at trial

Appellant or criminal defendant:

**Adrian Francisco Miranda**

Counsel for Appellant:

**Ronald K. Esposito** — Counsel at trial
7324 Southwest Fwy #555
Houston, TX 77074

**Mandy Miller** — Counsel on appeal
2910 Commercial Center Blvd, Ste. 103-201
Katy, TX 77494

Trial Judge: **Hon. Susan Brown**

ii

# TABLE OF CONTENTS

STATEMENT REGARDING ORAL ARGUMENT.................................................i

IDENTIFICATION OF THE PARTIES..........................................................ii

TABLE OF CONTENTS ...........................................................................iii

INDEX OF AUTHORITIES .......................................................................iv

STATEMENT OF THE CASE.....................................................................5

GROUND FOR REVIEW ..........................................................................6

Does prejudice exist under the second prong of *Strickland v. Washington* when a defendant is charged with aggravated sexual assault of a child and counsel elicits testimony from his client that he had previously been charged with a sexual offense and counsel had the client admit he had been untruthful in his testimony to the jury?..............................................................................................6

CERTIFICATE OF SERVICE...................................................................10

# INDEX OF AUTHORITIES

**CASES**

*Miranda v. State,*
   No. 14-14-00091-CR, 2015 WL 1870329 (Tex. App.--Houston [14th Dist.]
   Apr. 23, 2015, no pet. h.) (not designated for publication) ............................................. 1, 3

*Robertson v. State,*
   187 S.W.3d 475 (Tex. Crim. App. 2006) ........................................................................ 3

*Strickland v. Washington,*
   466 U.S. 668 (1984) ........................................................................................................ 3, 4

*United States v. Cronic,*
   466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). In ......................................... 4

*Williams v. State,*
   662 S.W.2d 344 (Tex. Crim. App. 1983) ......................................................................... 3

**RULES**

TEX. R. APP. P. 38.2(a)(1)(A) ........................................................................................... ii

TEX. R. APP. P. 39.7 ............................................................................................................ i

**TO THE HONORABLE COURT OF CRIMINAL APPEALS OF TEXAS:**

## STATEMENT OF THE CASE

Appellant was charged by indictment with aggravated sexual assault of a child. (CR 7). A jury convicted appellant of the charged offense. (CR 183, 184). Appellant chose to forgo punishment by jury and the court sentenced him to 25 years confinement in the Institutional Division of the Texas Department of Criminal Justice. (CR 183, 184).

## STATEMENT OF THE PROCEDURAL HISTORY

On April 23, 2015, a unanimous panel of the Fourteenth Court of Appeals issued an unpublished opinion affirming appellant's conviction for aggravated sexual assault of a child. *Miranda v. State,* No. 14-14-00091-CR, 2015 WL 1870329 (Tex. App.--Houston [14th Dist.] Apr. 23, 2015, no pet. h.) (not designated for publication). (Appendix A). A motion for rehearing and motion for en banc reconsideration were filed. Both motions were denied and this petition was originally due on July 1, 2015. After an extension was granted, this petition is due on August 3, 2015.

5

## GROUND FOR REVIEW

Does prejudice exist under the second prong of *Strickland v. Washington*[1] when a defendant is charged with aggravated sexual assault of a child and counsel elicits testimony from his client that he had previously been charged with a sexual offense and counsel had the client admit he had been untruthful in his testimony to the jury?

Appellant took the stand and testified on his own behalf and denied all of the accusations against him. On redirect examination, counsel asked appellant whether he had ever previously been charged with a sex crime. (RR IV 193). Appellant testified that he had not. (RR IV 193). However, the State approached the bench and informed the court that appellant had, as a juvenile, been charged with indecency with a child. (RR IV 195). Counsel knew of this offense because the State gave notice and it was in the clerk's file. (CR 76, 78-80; RR IV 196). Yet, counsel's only response to the State's assertion that counsel had "opened the door" was that the charge was dismissed. (RR IV 195). But counsel had asked appellant on direct whether appellant had ever been charged with a sex crime, not whether he had been convicted.

Counsel then followed up by asking appellant, in front of the jury, whether his testimony that he had never been charged with a sex crime was truthful. (RR IV 196). Appellant responded that it was not and counsel passed the witness. (RR IV 196). The State did not ask any further questions and both sides rested. (RR IV 197). The very last evidence the jury received was that appellant had previously been charged with a "sexually-based offense." (RR IV 196). Counsel did not elicit testimony that the charge occurred

6

when he was a juvenile, and did not inform the jury that it was dismissed. They only knew that appellant was involved in some sort of sexual crime and that he had lied to them initially when he said he had never been charged.

This Court agreed that counsel's performance "very well could amount to deficient performance under *Strickland* because appellant's defense rested almost entirely on his credibility versus the complainant's credibility." *Miranda*, 2015 WL 1870329, at *5. The court also noted that the record revealed no valid trial strategy for counsel's opening the door to the extraneous offense. *Id.* at n.3. Despite counsel's deficient performance, the court of appeals found that appellant did not demonstrate that he was prejudiced because "the evidence of the extraneous offense was extremely brief." *Id.* at *6.

Extraneous-offense evidence is "inherently prejudicial." *Williams v. State*, 662 S.W.2d 344, 346 (Tex. Crim. App. 1983). This is especially true when, as here, the defense strategy is based entirely on appellant's credibility versus the complainant's credibility. Opening the door to otherwise inadmissible extraneous offense evidence that undermines the defendant's character and credibility serves no purpose other than to prejudice the defendant's ability to present his defense. *Robertson v. State*, 187 S.W.3d 475, 484 (Tex. Crim. App. 2006).

Additionally, certain types of errors by counsel are considered so serious that prejudice is presumed. *Strickland v. Washington*, 466 U.S. 668, 692 (1984); *United States v. Cronic*, 466 U.S. 648, 659 n. 25, 104 S.Ct. 2039, 2047 n.25, 80 L.Ed.2d 657 (1984). In cases involving

---

[1] 466 U.S. 668 (1984)

7

those errors, a defendant is not required to affirmatively prove prejudice under the second prong of the *Strickland* test. For example, in a denial of counsel case, and in certain types of government interference cases, prejudice is presumed because "prejudice in these circumstances is so likely that case-by-case inquiry into prejudice is not worth the cost." *Strickland,* 466 U.S. at 692. The Supreme Court also recognized that a "more limited" presumption of prejudice will apply when a defendant alleges actual ineffectiveness based on counsel's conflict of interest. *Id.* However, the Court hesitated to presume prejudice in all actual ineffectiveness cases. *Id.* at 693.

> Conflict of interest claims aside, actual ineffectiveness claims alleging a deficiency in attorney performance are subject to a general requirement that the defendant affirmatively prove prejudice.... Attorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial. They cannot be classified according to likelihood of causing prejudice. Nor can they be defined with sufficient precision to inform defense attorneys correctly just what conduct to avoid. *Id.*

While concern over the uncertainty of prejudice and the inability to define deficient conduct is valid in many situations, such concern is unjustified in this case.

Appellant was charged with aggravated sexual assault of a child. Appellant testified on his own behalf and denied the allegations against him. Thus, appellant's defense hinged on the jury's evaluation of his credibility. Through trial counsel's direct examination, the jury was allowed to hear that appellant was previously charged with another sexually-based offense. Additionally, the jury learned that appellant lied about never being charged, thus continuing to injure his credibility. This was the last evidence presented to the jury before

8

closing arguments. By finding that appellant did not establish prejudice from his counsel's deficient conduct, this Court ignored the enormous impact counsel's actions would have had on the jury and how it would have affected its decision on appellant's guilt or innocence. Is there any juror who would have believed appellant's denials that he committed the charged offense after learning that appellant was previously accused of some sort of sexual offense and had perjured himself? Under these circumstances, appellant suffered prejudice as a result of his counsel's deficient performance.

## CONCLUSION

It is respectfully requested that this petition be granted, the Fourteenth Court of Appeals' judgment be reversed, and the court ordered to enter findings consistent with this Court's opinion.

/s/ Mandy Miller
MANDY MILLER
Attorney for Adrian Francisco Miranda
2910 Commercial Center Blvd., Ste. 103-201
Katy, TX 77494
SBN 24055561
(832) 900-9884
FAX (877) 904-6846

## CERTIFICATE OF COMPLIANCE

In accordance with the Texas Rules of Appellate Procedure, I hereby certify that appellant's petition for discretionary review, filed on July 12, 2015, has 1,725 words based upon a word count under MS Word.

/s/ Mandy Miller
Mandy Miller

## CERTIFICATE OF SERVICE

Appellant has sent a copy of the foregoing instrument to counsel for the State of Texas at the following electronic mail addresses:

Alan Curry
Harris County Assistant District Attorney
curry_alan@dao.hctx.net

Lisa McMinn
State Prosecuting Attorney
lisa.mcminn@spa.state.tx.us

/s/ Mandy Miller
Mandy Miller
Attorney for Adrian Francisco Miranda
2910 Commercial Center Blvd., Ste. 103-201
Katy, TX 77494
SBN 24055561
(832) 900-9884
FAX (877) 904-6846

# Appendix A

2015 WL 1870329
Only the Westlaw citation is currently available.

SEE TX R RAP RULE 47.2 FOR DESIGNATION
AND SIGNING OF OPINIONS.

DO NOT PUBLISH—TEX. R. APP. P. 47.2(B).
Court of Appeals of Texas,
Houston (14th Dist.

Adrian Francisco Miranda, Appellant
v.
The State of Texas, Appellee

NO. 14–14–00091–CR | Memorandum Opinion
filed April 23, 2015

On Appeal from the 185th District Court, Harris
County, Texas, Trial Court Cause No. 1400039

**Attorneys and Law Firms**

Devon Anderson, Alan Curry, David Christopher Newell,
for State of Texas.

Mandy Miller, for Adrian Francisco Miranda.

Panel consists of Chief Justice Frost and Justices Boyce
and McCally.

## MEMORANDUM OPINION

Sharon McCally, Justice

*1 A jury found appellant Adrian Francisco Miranda
guilty of aggravated sexual assault of a child by causing
the sexual organ of a child to contact his sexual organ. *See*
Tex. Penal Code Ann. § 22.021 (a)(1)(B)(iii). The trial
court sentenced appellant to twenty-five years'
confinement. In seven issues, appellant contends his trial
counsel rendered ineffective assistance. We affirm.

## I. BACKGROUND

Appellant is the brother of the complainant's mother, so
he is the complainant's uncle. Appellant was twenty-four
years old at the time of trial in January 2014. The
complainant, who was ten years old at the time of trial,
testified about multiple occasions when appellant sexually
assaulted her.

The complainant lived in an apartment with her mother
(the Mother), stepfather, and younger brother when she
was about five years old. She testified that she would see
appellant sometimes over the weekends, and he would
usually just visit during the day. He would "not really"
spend the night. She described an incident when she and
her brother were playing in their room, and appellant took
her into a closet, pulled down her pants and underwear,
pulled down his pants and underwear, put her close to
him, and "started putting his private area in mine and
started going back and forth." She testified, "It felt bumpy
and rough and hard." He told her not to tell anyone. She
testified that he did this "a couple more times" on
different times and days, and it always happened in the
closet.

When she was about six or seven years old, the
complainant moved with the Mother to a one-story house.
She testified that appellant would do "the same thing"
with her in the restroom of this house "every night, like,
around 1:00 or 2:00." Appellant did this every night that
he was there, but that was not very often, so it happened
"about a few times." One time appellant "sat down on the
toilet and he actually had put me close and pushed me
back and forth." She testified that he "put lotion on it,"
and so it felt "smooth and bumpy." She testified that his
private area was inside and touched her private area.

When she was seven or eight, the complainant moved
with the Mother to a two-story house. The complainant
testified that appellant came over to that house a lot, and
she described two more instances of abuse. On one
occasion, appellant took the complainant to her bedroom
and licked inside her private area. On another occasion,
appellant took her to a restroom, locked the doors, pulled
down her pants and underwear, pulled down his pants and
underwear, turned off the lights, laid down, put the
complainant on top of him, and started pushing her up and
down. She testified that his private area went inside her
private area.

The complainant's stepmother (the Stepmother) testified
as the outcry witness. The complainant was visiting her
father (the Father) and the Stepmother on Saturday,
March 24, 2012, and playing a video game with other
children. In the game, the player was a rabbit, and the
game ended when a man caught the rabbit. The

Stepmother overheard the complainant say, "He's about to dig in their vagina." The complainant was eight years old at the time. When the Father got home from work, he and the Stepmother spoke with the complainant. The Stepmother asked the complainant if she knew what a vagina was, and the complainant said it was "something, you know, deep in her stomach." When the Stepmother asked why she had said "vagina," the complainant "started crying hysterically and at that point she just shut down and wouldn't speak anymore at all." The complainant would not respond or make eye contact, and this lasted about thirty minutes. The Stepmother and Father left the complainant alone in their bedroom.

*2 Eventually the complainant asked to speak with the Stepmother and said she did not want to talk about vaginas anymore. The complainant started crying again. The Stepmother said, "I don't like talking about vaginas, you know.... But my only concern is that every time you keep saying the word 'vagina,' you keep crying." The complainant started talking about things going on in her life, such as the ongoing battle between the Mother and Father for custody of the complainant. The Stepmother testified that "the custody thing was stressing her out," including that she was being told to keep things from one parent or the other. The Stepmother repeatedly told the complainant that the Stepmother did not understand what those things had to do with vaginas, and the Stepmother asked the complainant why she was crying. As the conversation was coming to a close, the complainant said, "My uncle." The Stepmother asked, "What about your uncle?" The complainant said, "He pulls down my pants.... And he touches me, and I don't like it."

The Stepmother then told the Father what the complainant had said, and they both talked with the complainant again. The complainant said, "My uncle Adrian pulls down my pants and he takes his private and he puts it in mine and he goes back and forth and he tells me this is what boys are going to do to me when I get older." The Father asked how long it had been going on, and the complainant said since she was five or six years old. When asked the last time it had happened, the complainant said the previous Wednesday.

After the conversation, the Stepmother and Father took the complainant to a hospital for an examination. A nurse from the hospital testified that she did a head-to-toe and genital exam of the complainant. The nurse testified that there were no acute injuries. But the nurse also testified that the hymen does not break every time there is penetration, and even if there are no visible signs of injury, that does not mean there was never an injury because the tissue heals quickly. The time period between the complainant's last reported assault and the exam was sufficient for any injuries in the genital area to heal. She testified it is very uncommon to find visible physical trauma, and "nine times out of ten we don't see any injuries in children."

Within a few days of the hospital examination, the complainant was interviewed by a forensic interviewer, Lisa Holcomb, at the Children's Assessment Center. Holcomb testified that the complainant was able to provide sensory detail and was never inconsistent with her details of what happened. Dr. Lawrence Thompson testified about why children might wait to tell someone about abuse and other issues such as how children can be groomed by abusers. He was the director of therapy and psychological services at the Children's Assessment Center.

Appellant's trial counsel, Ronald Esposito, cross-examined each of these witnesses and called four additional witnesses: appellant's girlfriend (the Girlfriend), the Mother, the Father, and appellant. His apparent trial strategy was to show that the abuse was fabricated during a custody battle and to point out inconsistencies or conflicts with the complainant's testimony.

On cross-examination, the complainant testified that she saw appellant's private part, but she had told Holcomb that she never saw it. She also testified that she did not know what the word "vagina" meant when she used it, and the Stepmother had told the complainant what the word meant before the complainant told about the sexual assault. The complainant testified that she was "kind of" mad at the Mother because "she didn't protect me." The complainant testified that her mother was "barely protective" but now had "learned her lesson."

The Father testified that the complainant and her brother had been living with the Mother since a custody suit in 2006. The Father filed for a modification of custody in 2009, and the Mother and Father agreed that the complainant would continue to live with the Mother, but the Father would have primary custody of the complainant's brother. The Father filed for another modification of custody in 2011; he was seeking primary custody of the complainant at the time of trial. At the time the allegations of abuse came to light, the complainant had been living with the Mother. But shortly after the complainant's outcry, the complainant began living primarily with the Father and Stepmother. The complainant continued to live primarily with the Father and Stepmother at the time of trial.

**\*3** Esposito elicited testimony from Dr. Thompson that he had seen cases of false accusations at the Children's Assessment Center. Thompson could think of one case where a child used sensory terms but made a false allegation of abuse. He testified that he had seen "a coaching case where parents were at odds with one another," and he had seen "cases where there has been coaching and custody issues."

The Mother testified that appellant lived with them in the apartment. She testified further that appellant was never alone with the complainant when they lived in the apartment; the Mother "never left them alone in the apartment." The Mother also testified that appellant had lived with them for several months at the one-story house and then for three weeks at the two-story house. There had been occasions at the one-story house when appellant had been alone with the complainant. But the Mother did not notice anything unusual about the complainant's behavior around or toward appellant.

The Girlfriend testified that she lived with appellant and the complainant's family at both of the houses, and she slept in the same bed as appellant. She testified that the kids were never with appellant. She testified that she was always with him and he never left her sight. She testified that appellant was a heavy sleeper, and she was a light sleeper. They would go to bed before the kids usually, and he never woke up in the middle of the night.

Appellant was the last person to testify at trial. He denied the allegations in general and denied a number of the specifics of the complainant's testimony. He testified that the complainant lied all the time. He testified that he lived in the apartment for a couple of months and he lived in another house with the complainant for four or five months. He testified that he was never alone with the complainant at the apartment or the two-story house, but he was alone with the complainant on more than one occasion while they lived at the one-story house. On cross-examination, appellant acknowledged that he had a prior conviction for aggravated assault, and he had served two years in prison. He also served 180 days concurrently for the possession of a prohibited substance while in prison.

The jury found appellant guilty, and the trial court assessed punishment at twenty-five years' confinement. No motion for new trial was filed. This appeal followed.

## II. INEFFECTIVE ASSISTANCE CLAIMS

In seven issues, appellant contends Esposito rendered ineffective assistance of counsel. First we review general principles related to ineffective assistance claims. Then we address each of appellant's contentions in turn.

### A. General Principles
To prevail on an ineffective assistance claim, an appellant must show that (1) counsel's performance was deficient because it fell below an objective standard of reasonableness; and (2) counsel's deficiency caused the appellant prejudice—there is a probability sufficient to undermine confidence in the outcome that but for counsel's errors, the result of the proceeding would have been different. *Strickland v. Washington,* 466 U.S. 668, 687–88, 694 (1984); *Perez v. State,* 310 S.W.3d 890, 892–93 (Tex.Crim.App.2010). An appellant must satisfy both prongs by a preponderance of the evidence; failure to demonstrate either deficient performance or prejudice will defeat a claim of ineffectiveness. *Perez,* 310 S.W.3d at 893. When one of the prongs is dispositive, we need address only that prong on appeal. *Washington v. State,* 417 S.W.3d 713, 724–25 (Tex.App.–Houston [14th Dist.] 2013, pet. ref'd).

**\*4** Although an appellant may claim ineffective assistance of counsel for the first time on direct appeal, as here, the record in such a case often will not be sufficient to overcome the presumption that counsel's conduct was reasonable and professional. *Cannon v. State,* 252 S.W.3d 342, 349 (Tex.Crim.App.2008). In the face of a silent record, we will not find deficient performance unless counsel's conduct is so outrageous that no competent attorney would have engaged in it. *Goodspeed v. State,* 187 S.W.3d 390, 392 (Tex.Crim.App.2005). In assessing whether counsel rendered effective assistance, we must review the totality of the representation and the circumstances of each case without the benefit of hindsight. *Lopez v. State,* 343 S.W.3d 137, 143 (Tex.Crim.App.2011). Although a single error will not typically result in a finding of ineffective assistance, an egregious error may satisfy the *Strickland* standard on its own. *Id.*

### B. Issue 1: Voir Dire
In his first issue, appellant contends that Esposito failed to adequately voir dire the venire panel and prepare them for the defense's theory that the complainant was coached by the Father and Stepmother to prevail in a custody dispute. Appellant admits that Esposito in fact questioned the venire about custody disputes and whether children could be led to believe facts that were untrue. We have

reviewed the voir dire proceedings, and indeed, Esposito asked the jury questions directly related to the defensive theory. But appellant now contends that Esposito should have engaged in a more "detailed line of questioning" and should have more "thoroughly" questioned the venire.

We hold that Esposito's questioning was not so outrageous that no competent attorney would have engaged in it. There could be a reasonable trial strategy for asking the questions that he did and not asking ones that another competent attorney might have asked. *See Goodspeed*, 187 S.W.3d at 392–94 (no deficient performance when trial counsel did not ask any questions during voir dire); *Harrison v. State*, 333 S.W.3d 810, 814 (Tex.App.–Houston [1st Dist.] 2010, pet. ref'd) (on a silent record, "failure to ask questions appellant's counsel believed to be important does not mean that counsel's conduct was deficient; nor does the lack of such questioning amount to behavior that is so outrageous, no competent attorney would have engaged in it"). Appellant has failed to prove deficient performance.

Appellant's first issue is overruled.

### C. Issue 2: Preparation of the Girlfriend to Testify at Trial

In his second issue, appellant contends Esposito failed to prepare the Girlfriend to testify, which resulted in the jury learning that appellant had previously been incarcerated for a prior conviction. Appellant bases the lack-of-preparation allegation on the mere fact that the Girlfriend revealed appellant's prior incarceration in response to one of Esposito's questions, although appellant admits that the Girlfriend provided favorable testimony on appellant's behalf.[1]

We will not presume on a silent record that Esposito failed to prepare a defense witness to testify merely because the witness alluded to inadmissible evidence while responding to a question from counsel who did not explicitly elicit the inadmissible evidence. *See, e.g., Lopez*, 343 S.W.3d at 142 ("In order for an appellate court to find that counsel was ineffective, counsel's deficiency must be affirmatively demonstrated in the trial record; the court must not engage in retrospective speculation."). It is entirely possible that a witness may blurt out inadmissible testimony despite being warned not to do so. Accordingly, appellant has failed to prove deficient performance.

**\*5** Appellant's second issue is overruled.

### D. Issue 3: Extraneous Offense Evidence

In his third issue, appellant contends that Esposito conducted a line of questioning that resulted in the admission of damaging extraneous offense evidence. In particular, appellant points to Esposito's questioning of appellant on redirect, shortly before the defense and State rested their cases. Esposito asked, "In other words, have you been charged with a sex crime before?" Appellant testified, "No, never." Outside the jury's presence, the State argued that appellant's testimony on this issue was false because appellant had been charged as a juvenile with indecency with a child. Esposito acknowledged that he received the State's notice of the offense and knew about it, "but it was dismissed." The State argued, "But he said never charged."[2]

After an off-the-record discussion, Esposito asked one final question: "I asked you a few minutes ago if you'd ever been charged with a sexually-based offense and you said never. Is that a true statement?" Appellant answered, "No." This was the last piece of evidence presented to the jury before both sides rested—essentially, that appellant had been previously charged with a sex crime, and he just lied about it to the jury.

This brief questioning, coupled with Esposito's on-the-record admission that he was aware of the prior charge, very well could amount to deficient performance under *Strickland* because appellant's defense rested almost entirely on his credibility versus the complainant's credibility. *See Robertson v. State*, 187 S.W.3d 475, 484 (Tex.Crim.App.2006) (collecting cases and holding that counsel was deficient for eliciting inadmissible evidence of appellant's two prior convictions even though counsel testified that his trial strategy was to show that appellant was not a liar; reasoning that in cases like this where the appellant's defense "rested almost entirely on his credibility, the weight of authority supports a holding that appellant's trial lawyer performed deficiently under the first prong of *Strickland* by allowing the jury to hear prejudicial and clearly inadmissible evidence because this evidence could serve no strategic value including demonstrating that appellant is not a liar"); *Garcia v. State*, 308 S.W.3d 62, 68 (Tex.App.–San Antonio 2009, no pet.) (holding that trial counsel was deficient for opening the door to inadmissible evidence of a prior sexual assault in an aggravated-sexual-assault case when his defense rested almost entirely on his credibility versus the complainant's credibility); *see also Anaya v. State*, 988 S.W.2d 823, 826 (Tex.App.–Amarillo 1999, no pet.) (holding that counsel was deficient for opening the door to inadmissible prior convictions and unadjudicated offenses despite silent record on counsel's trial strategy).[3]

*6 However, regardless of whether counsel performed deficiently, we hold that appellant has not demonstrated prejudice. Courts holding that defendants suffered prejudice in analogous cases have relied on the following factors: (1) credibility was integral to the defense; (2) presentation of the extraneous offense evidence was extensive; and (3) the State discussed the extraneous offense evidence during closing argument. *See Garcia,* 308 S.W.3d at 66–67, 75–76 (defendant suffered prejudice because his only viable defense was dependent on the strength of his own credibility as compared to the complainant's credibility, the State called another alleged sexual assault victim to testify about the extraneous offense with significant detail, and the State emphasized the extraneous offense during closing argument); *Robertson v. State,* 214 S.W.3d 665, 667–68 (Tex.App.–Waco 2007, no pet.) (defendant suffered prejudice because credibility was critical, there was a considerable amount of evidence related to prior convictions, and the State emphasized the prior convictions during closing argument); *see also Ex parte Menchaca,* 854 S.W.2d 128, 131–33 (Tex.Crim.App.1993) (defendant suffered prejudice because the determination of guilt rested entirely on the credibility of the witnesses and the State mentioned the prior conviction during closing argument to undermine defendant's credibility); *Davis v. State,* 413 S.W.3d 816, 827, 837–38 (Tex.App.–Austin 2013, pet. ref'd) (defendant suffered prejudice when the evidence of guilt was largely circumstantial, the extraneous offense evidence was a significant portion and central theme of the case against him, and the State reinforced the harmful effect of this evidence during closing argument). In contrast, courts have found no prejudice when there was significant evidence of guilt and the State did not emphasize the inadmissible evidence. *See Samarripas v. State,* 438 S.W.3d 673, 676 (Tex.App.–San Antonio 2014, no pet.) (defendant failed to prove prejudice because there was overwhelming evidence of guilt and the State did not rely on the extraneous offenses to make its case or in closing arguments); *Agbogwe v. State,* 414 S.W.3d 820, 834–35 (Tex.App.–Houston [1st Dist.] 2013, no pet.) (defendant failed to prove prejudice because this was not a case in which the primary testifying witnesses were the defendant and the complainant, there were multiple witnesses including a disinterested one, and the State specifically told the jury during closing argument that the case was not about the extraneous offense and that the jury should not focus on it).

Appellant's credibility was an integral part of his defense that the sexual assault never happened, and the evidence of guilt was not overwhelming. However, the evidence of the extraneous offense was extremely brief. It consisted of a single question and answer whereby appellant admitted to being charged with a sex crime. No underlying details of the extraneous offense were presented. The State did not cross-examine appellant about the matter, nor did the State bring forth a rebuttal witness. During closing arguments, the State argued that appellant "lied" on the stand, but the State did not mention the unadjudicated extraneous offense. Instead, the State referred to appellant's testimony that his memory was "not that good" and he could not "for sure" tell the jury that he was not alone with the complainant while they lived in the apartment, although he had testified earlier that he was never alone with her in the apartment. Nothing else in the record indicates the jury considered the extraneous offense. Thus, unlike in many of the cases cited above, the issue did not permeate the trial.

Further, although the extraneous offense evidence may have undermined appellant's credibility to some degree, appellant's credibility had already been undermined through evidence of his other, admissible, prior convictions. Esposito opened the door to the inadmissible unadjudicated offense in the context of attempting to explain circumstances of the admissible offense of aggravated assault—in particular, the aggravated assault was not against a child and was not a sexual assault. The State also had undermined appellant's credibility through the testimony of the Mother. She testified that when the allegations came to light, she asked appellant to leave her house because she supported her daughter, and she no longer maintained a relationship with appellant. A reasonable inference from this testimony is that she did not believe appellant's denial of the allegations.

After considering the entire record, including the evidence and argument of counsel, we hold that appellant has failed to show that there is a probability sufficient to undermine confidence in the outcome that but for Esposito's potential error, the result of the proceeding would have been different.

Appellant's third issue is overruled.

### E. Issue 4: Extraneous Offense Burden–of–Proof Instruction

In his fourth issue, appellant contends Esposito should have asked the trial court to instruct the jury on the burden of proof for extraneous offenses at the time the evidence was admitted and in the jury charge. We hold that appellant has not shown that Esposito was deficient.

*7 Appellant was not entitled to a burden-of-proof instruction at the time the evidence of extraneous offenses

was admitted. *See Delgado v. State*, 235 S.W.3d 244, 251 (Tex.Crim.App.2007). As such, Esposito was not deficient for failing to request the instruction. *See Ex parte Nailor*, 149 S.W.3d 125, 133–34 (Tex.Crim.App.2004) (counsel not deficient for failing to request a jury instruction when the defendant was not entitled to it).

And generally, courts have recognized that it may be a legitimate trial strategy to not request a burden-of-proof instruction in the charge because the instruction would draw extra attention to the extraneous offenses. *See, e.g, McNeil v. State*, 452 S.W.3d 408, 415 (Tex.App.–Houston [1st Dist.] 2014, pet. filed); *Gholson v. State*, 5 S.W.3d 266, 273 (Tex.App.–Houston [14th Dist.] 1999, pet. ref'd). Although it is possible that Esposito's failure to request such an instruction was not the result of trial strategy, we cannot speculate about his reasoning with a silent record. *See Ex parte Varelas*, 45 S.W.3d 627, 632 (Tex.Crim.App.2001) (reasoning that trial counsel's failure to request a reasonable doubt instruction for extraneous offenses was *not* deficient performance on a silent record, but it *was* deficient performance when counsel admitted the failure was simply an oversight and not the result of trial strategy). The record is silent about counsel's reason for not requesting the reasonable doubt instruction. Appellant has failed to prove deficient performance.

Appellant's fourth issue is overruled.

### F. Issue 5: Extraneous Offense Limiting Instruction
In his fifth issue, appellant contends Esposito failed to ask for a limiting instruction as soon as evidence of the extraneous offenses was admitted. We hold that appellant has not shown that Esposito was deficient. *See, e.g., Delgado*, 235 S.W.3d at 250 ("Texas courts have frequently stated that the decision of whether to request a limiting instruction concerning the proper use of certain evidence, including extraneous offenses, may be a matter of trial strategy.").

Appellant's fifth issue is overruled.

### G. Issue 6: Investigation of Prior Allegation of Abuse
In his sixth issue, appellant contends Esposito failed to investigate and discover previous allegations of the complainant's abuse by the Father and Stepmother. In particular, appellant cites to State's Exhibit 15, which includes statements in the complainant's medical records from 2010 when appellant was incarcerated and the complainant had a urinary tract infection. Appellant suggests that several of the statements indicate that the Father and Stepmother were concerned about possible sexual abuse, and this would have been evidence in support of Esposito's theory that the complainant was coached to fabricate the allegations.[4] Appellant contends, "There can be no valid trial strategy for failing to bring this to the jury's attention."

We will not speculate on a silent record that Esposito failed to investigate this line of defense; it is entirely possible he considered the defensive evidence and decided to not pursue it based on a reasonable trial strategy. *See, e.g., Rylander v. State*, 101 S.W.3d 107, 110–11 (Tex.Crim.App.2003) (refusing to speculate about counsel's trial strategy and find deficient performance on a silent record based on counsel's failure to adduce additional evidence in support of appellant's sole defense and to prepare and investigate witnesses, among other things). Appellant does not cite any authority in support of this issue, and we have found none. *See* Tex.R.App. P. 38.1(i) (argument must contain citations to authorities). Appellant has failed to prove deficient performance.

**\*8** Appellant's sixth issue is overruled.

### H. Issue 7: Cumulative Error
In his seventh issue, appellant contends that the cumulative effect of Esposito's errors resulted in a constructive denial of the effective assistance of counsel. Appellant correctly notes that we must look to the totality of the representation, rather than isolated acts or omissions, to determine whether appellant received effective assistance of counsel. *See, e.g., Ex parte Bryant*, 448 S.W.3d 29, 39 (Tex.Crim.App.2014); *Wilkerson v. State*, 726 S.W.2d 542, 548 (Tex.Crim.App.1986).

However, even assuming that Esposito's representation was deficient under appellant's third issue, we have rejected each of appellant's other contentions that Esposito's conduct could be considered deficient on direct appeal with a silent record. And, we have determined that appellant did not prove prejudice for appellant's third issue above. Ultimately, we have reviewed the totality of the representation and note that Esposito cross-examined witnesses, presented numerous defense witnesses, and held the State to its burden to prove appellant's guilt beyond a reasonable doubt. Based on this record, we cannot hold that appellant was denied effective assistance of counsel after reviewing the totality of the representation.

Appellant's seventh issue is overruled.

**All Citations**

Not Reported in S.W.3d, 2015 WL 1870329

### III. CONCLUSION

Having overruled each of appellant's issues, we affirm the trial court's judgment.

Footnotes

1    The complained-of colloquy occurred as follows:
     Q. All right. Have you in the recent past lived with him?
     A. Yes, sir.
     Q. And when did that begin to occur?
     A. Whenever he got out the—out of jail the last time.

2    Appellant argues on appeal, and the State does not dispute, that Esposito opened the door to otherwise inadmissible evidence regarding the prior charge.

3    Although opening the door to inadmissible extraneous offense evidence may serve a legitimate trial strategy under the particular circumstances of a case, we glean no such considerations from this record. *See Williams v. State*, 301 S.W.3d 675, 686–87 (Tex.Crim.App.2009) (counsel's opening door to extraneous murder served to show bias of witness who collected a Crime Stoppers reward); *Jensen v. State*, 66 S.W.3d 528, 544 (Tex.App.–Houston [14th Dist.] 2002, pet. ref'd) (in an aggravated-sexual-assault-of-a-child prosecution, counsel's opening door to the defendant's abuse of the victim's mother, who testified against him, served to show that she might harbor bias or have a reason to fabricate the outcry statement).

4    The shorthanded statements include: (1) "Spoke to step-mother who stated that they are suspecting that child has been touched"; and (2) "Dad needs to speak to triage nurse again pls Regarding /// dad has concers and ? Regarding// poss sexual abuse on pt."

End of Document                                    © 2015 Thomson Reuters. No claim to original U.S. Government Works.