**AFFIRMED and Opinion Filed April 22, 2021**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-20-00770-CR**

**EX PARTE KEITH TEHDAI CHITSAKA**

**On Appeal from the 366th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 366-82291-2019**

## MEMORANDUM OPINION

Before Justices Molberg, Reichek, and Nowell
Opinion by Justice Reichek

Keith Tehdai Chitsaka appeals the trial court's order denying his article 11.072 application for writ of habeas corpus. In two issues, he contends the trial court abused its discretion by denying his application because he established trial counsel was ineffective and the record does not support the trial court's findings of fact and conclusions of law. We affirm the trial court's order.

Background

Appellant has been in the United States continuously since he arrived in August of 2000 at the age of four with his mother from Zimbabwe. In 2019, appellant was indicted for possession of less than one gram of methamphetamine. Although

he was released on bond, he twice failed to appear, and the bond was forfeited. After a warrant issued, he was taken into custody. On September 10, 2019, he pleaded guilty as part of a plea bargain agreement with the State. Under the terms of the plea bargain, appellant received three years deferred adjudication probation with a $200 fine.

On April 27, 2020, appellant filed an application for writ of habeas corpus, alleging that trial counsel Deric Walpole was ineffective for, among other things, failing to investigate the facts and possible defenses in his case, failing to investigate the immigration consequences of a guilty plea, and failing to inform and/or advise appellant of the consequences of his guilty plea. In his application, appellant asserted his "deferred action as a childhood arrival" (DACA) status and employment authorization had been terminated, he was being restrained at a United States Immigration and Customs Enforcement Detention Center, and he was subject to removal from the United States under the Immigration and Nationality Act.

Appellant attached a seven-page affidavit in which he detailed his interaction with Walpole and his understanding of the plea bargain agreement, its terms, and what he understood the consequences of his plea to be. Appellant said he met with trial counsel three times:

> Each time we talked, I made it clear to Mr. Walpole that I was currently on DACA with work permit, which as of all three dates we visited, my DACA status was valid. Each visit I made Mr. Walpole aware that my biggest concern with how this case turned out was if and how it would affect my DACA status. I informed Ms. [sic] Walpole that since

–2–

President Trump has been in office the DACA kids as we have become to be known are under constant fear and worry about losing our DACA status. . . I knew that consequences existed but I did not know whether certain offenses led to deportation and others did not, whether it was the resolution of the charge that led to deportation and the charge classification itself made no difference, but I made it clear to Mr. Walpole my concern was to make sure whatever we did would not result in my loss of DACA. . .

He further averred that trial counsel represented his plea offer from the State would not result in a conviction for the offense because it would be a deferred adjudication, he would not go to jail or prison, and provided he did not "screw up while on probation, [his] DACA status would not be harmed." Finally, he stated that when trial counsel went over the plea papers with him and read the instructions that a possible consequence of pleading could lead to deportation, he immediately stopped counsel and asked if that meant his DACA status could be harmed. According to appellant, trial counsel assured him it was a "form document, it read the same to every single person, and that it was just like a safety precaution to have because anytime a non-citizen enters a plea of guilty, there might or could be immigration consequences, and Mr. Walpole even stated there could be very serious consequences in [his] case." Walpole told him to expect the judge to warn him that he could be deported because the law required him to do so, but if he was a "model probationer and did not cause any sort of trouble, or get into any additional trouble, there would be no basis to take away [his] DACA status." According to appellant, had he "known that entering a plea of guilty to this specific felony offense alone would lead to an automatic termination from DACA, and mandatory deportation,

there would have been zero chance" he would have accepted this plea bargain from the State.

In lieu of an in-person hearing, appellant and the State agreed that trial counsel would file an affidavit responding to sixty questions. The questions inquired generally about trial counsel's background and experience and asked him specific questions about appellant's case, including whether he (1) was aware of appellant's immigration status, (2) informed appellant of the consequences of pleading guilty, and (3) investigated the immigration consequences of pleading guilty. In his affidavit, trial counsel recalled appellant was on a DACA work permit. He averred he advised appellant that he would probably be deported if he pleaded guilty to the offense and that he was going to get deported unless counsel could get some sort of pretrial diversionary disposition of the charges. According to Walpole, after reviewing the discovery, including police reports, lab reports, and call notes, he met with appellant and told him they would likely lose if they went to trial. They did not spend a lot of time discussing it because appellant wanted out of jail as soon as possible and was not interested in counsel trying to work the case. His "*only* concern, at all times, was securing his release from jail as soon as possible." Trial counsel stated he spoke to an immigration attorney but did not remember when they spoke or whether he relayed that conversation to appellant. Counsel stated he told appellant he "would probably be deported, which is what I understood the consequences to be." Counsel also stated he was "concerned about [appellant's] cavalier attitude

regarding the immigration consequences" and told appellant he "would probably be deported" if he pleaded guilty.

After trial counsel's affidavit was received, the State filed its response. The trial court took judicial notice of the record of the plea hearing, including the written admonishments and appellant's signed plea agreement. By order dated August 18, 2020, the trial court denied appellant's application and issued its findings of fact. This appeal ensued.

## Standard of Review

Appellant raises two issues which he addresses together in challenging the trial court's order. He first argues the trial court abused its discretion by denying his claim that counsel failed to provide effective assistance of counsel because counsel did not properly admonish him that pleading guilty to possession of methamphetamine would terminate his 12-year DACA status and result in deportation; he asserts that had he known, he would have demanded a trial. He also argues the trial court's findings of fact are not supported by the record.

An applicant seeking post-conviction habeas corpus relief bears the burden to prove his claim by a preponderance of the evidence. *Ex parte Torres*, 483 S.W.3d 35, 43 (Tex. Crim. App. 2016). The trial court is the sole finder of fact. *Id*. at 42; *Ex parte Garcia*, 353 S.W.3d 785, 787 (Tex. Crim. App. 2011). When reviewing an order denying relief on an article 11.072 post-conviction writ, "we afford almost total deference to a trial court's factual findings when they are supported by the

record, especially when those findings are based on credibility and demeanor." *Ex parte Torres*, 483 S.W.3d at 42; *Ex parte Garcia*, 353 S.W.3d at 788 (there is less leeway in an article 11.072 context to disregard the trial court's findings). We view the facts in the light most favorable to the trial court's ruling and will uphold the trial court's ruling absent an abuse of discretion. *See Kniatt v. State*, 206 S.W.3d 657, 664 (Tex. Crim. App. 2006). If the resolution of the ultimate question turns on an application of legal standards, we review the determination de novo. *See State v. Kerwick*, 393 S.W.3d 270, 273 (Tex. Crim. App. 2013); *Ex parte Martin*, 6 S.W.3d 524, 526 (Tex. Crim. App. 1999).

Ineffective Assistance of Counsel

To be entitled to post-conviction relief on a claim of ineffective assistance of counsel, appellant was required to show that (1) trial counsel's performance was deficient, in that it fell below an objective standard of reasonableness, and (2) appellant was prejudiced as a result of counsel's errors, in that, but for those errors, there is a reasonable probability of a different outcome. *Ex parte Torres*, 483 S.W.3d at 43 (quoting *Strickland v. Washington*, 466 U.S. 668, 687, 693 (1984)). An applicant's claim fails unless he proves both prongs of the *Strickland* standard by a preponderance of the evidence. *Perez v. State*, 310 S.W.3d 890, 893 (Tex. Crim. App. 2010). In other words, failure to prove either prong defeats a claim of ineffective assistance. *Id.*

The first prong requires appellant to show counsel's performance was deficient in that it failed to meet an objective standard of reasonableness under prevailing professional norms. *See Ex parte Bowman*, 533 S.W.3d 337, 349–50 (Tex. Crim. App. 2017); *see also Strickland*, 466 U.S. at 687–88. When the deportation consequences of a guilty plea are "truly clear," counsel's duty to advise his client of those consequences is "equally clear." *Ex parte Torres*, 483 S.W.3d at 44 (citing *Padilla v. Kentucky*, 559 U.S. 360, 369 (2010)). Counsel must adequately advise a defendant about the "presumptively mandatory" deportation consequences of a guilty plea. *Id*. at 44.

The second prong requires appellant show counsel's deficient performance affected the plea process thus causing appellant to suffer prejudice. *Hill v. Lockhart*, 474 U.S.52, 59 (1985); *Ex parte Torres*, 483 S.W.3d at 43. An applicant meets the prejudice prong by showing a reasonable probability exists that, but for counsel's deficient performance, the applicant would have insisted on going to trial rather than accepting the offer and pleading guilty. *Hill*, 474 U.S. at 59; *Ex parte Torres*, 483 S.W.3d at 43. In evaluating the evidence of appellant's decision making regarding his plea, "[c]ourts should not upset a plea solely because of post hoc assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences." *Lee v. United States*, 137 S. Ct. 1958, 1967 (2017).

Analysis

We need not determine whether counsel was deficient for stating he thought

appellant "would probably be deported" and "was going to get deported" rather than

stating that deportation was "mandatory" under the circumstances because appellant

has failed to show counsel's deficient performance affected the plea process, causing

appellant to suffer prejudice, under the second prong. *Id.*

It was appellant's burden to show that, but for counsel's deficient advice

regarding the immigration consequences of a plea bargain, he would have insisted

on going to trial rather than accepting the offer and pleading guilty. In support of

this, appellant offered his affidavit which stated:

> Had I known that entering a plea of guilty to this specific felony offense
> alone would lead to an automatic termination from DACA, and
> mandatory deportation, there would have been zero chance I would
> have accepted this plea bargain from the State and, moreover, had the
> State not offered a plea bargain that would have kept my DACA status
> as eligible and allowed me to remain in the United States as a DACA
> child, with no chance of removal, I would have requested a trial in this
> case as quickly as possible. . . I was also never informed that had I taken
> this case to trial and been found guilty, and requested my punishment
> be assessed by the Judge, that the Judge could at the very most sentence
> me to probation. There was never a chance for me to spend any time
> [in] prison unless I had requested a jury trial and requested the jury
> assessed [sic] my punishment. However, I would have been eligible for
> probation even if the Jury assessed the punishment but, knowing what
> I have been advised now, a trial, jury or bench, with the Judge assessing
> the punishment if convicted would have resulted in a mandatory
> sentence of probation. In the end, I could do no worse that probation
> with a trial or plea, but short of a plea bargain that removed any chance
> of my DACA status being cancelled, the only avenue to avoid
> deportation altogether would be by a contested trial, bench or jury. Had
> I been advised correctly, the plea hearing on September 10, 2019 would

have never happened, and a trial would have been requested without hesitation.

Absent any refuting testimony and if the trial court had found appellant's testimony was credible, appellant's claim might have merit. Here, however, the record of the plea hearing and trial counsel's affidavit rebuts appellant's allegations.

Walpole stated he was aware of appellant's immigration status and that he had a DACA work permit, but that appellant's sole concern was getting out of jail quickly. Walpole told appellant that, based on his review of the evidence, there were no viable defenses to the charged offense and appellant would likely lose at trial. He told appellant about the State's plea offer and that if he accepted the State's plea offer, he would probably be deported. However, if he got acquitted, that would likely solve his immigration issues. Walpole also told appellant that "he was going to get deported unless he could get him into PTD, or get the charges changed. . . [although] it was unlikely either of those things were going to happen, [] he should at least give me the opportunity to try to work the case and do better that the current offer of deferred adjudication on a felony." Appellant "did not want to hear it. He told [counsel] he wanted a probation deal, that he wanted the plea done as soon as possible, and that he was not concerned about the immigration consequences." Despite Walpole informing appellant that he would probably be deported, appellant's only concern was about getting released from jail as soon as possible. According to Walpole, he was concerned about appellant's "cavalier attitude about the immigration consequences." Walpole also stated that "the prosecutors weren't

–9–

likely to give [appellant] any breaks. He had already received deferred adjudication, which he did not successfully complete, and he had consecutive 2 bond forfeitures after indictment." Nevertheless, appellant "had no intentions of waiting in jail for a trial date . . . he wanted to be released as soon as possible."

The plea agreement, signed by appellant, counsel, the assistant district attorney, and the trial judge, states "If you are not a citizen of the United States of America, a plea of guilty or nolo contendere may result in deportation, exclusion from admission to this country, or the denial of naturalization under federal law," and that appellant "had an adequate opportunity to consult with his/her attorney who has explained his/her rights under the constitutions and laws of the United, States and the State of Texas, and is fully satisfied with the representation provided by his/her attorney." During the plea hearing, the following occurred:

> THE COURT: Are you a U.S. citizen?
>
> THE DEFENDANT: No, sir.
>
> THE COURT: Do you understand that by entering this plea, you could be deported?
>
> THE DEFENDANT: I do.
>
> THE COURT: All right. And you have gone over these things with your attorney?
>
> THE DEFENDANT: I have. Yes. sir.
>
> THE COURT: And with that in mind, do you wish to continue with this plea?
>
> THE DEFENDANT: I do.

       \*             \*            \*

COUNSEL: Mr. Chitsaka, I explained to you that I am not an immigration attorney -- correct?

THE DEFENDANT: Yes, sir.

COUNSEL: -- but that I do believe that this plea may have some pretty serious consequences as far as your immigration. You are illegally here in the United States, correct?

THE DEFENDANT: Yes, sir.

COUNSEL: But even knowing that, you want to proceed with this, correct?

THE DEFENDANT: Yes, sir.

COUNSEL: You also understand that nobody in this courtroom, including the prosecutor, the judge, the bailiffs, the court reporter, nobody was supposed to be here today to do this; everybody stopped what they were doing to come and do this plea for you so you could get out of jail?

THE DEFENDANT: Yes, sir.

COUNSEL: But even knowing that, you want to proceed with this, correct?

THE DEFENDANT: Yes, sir.

COUNSEL: And your mom met with me on a Saturday, because she works all week, and had to take an Uber home because she doesn't have a car?

THE DEFENDANT: Yes.

COUNSEL: All these people bending over backwards to help you out, correct?

–11–

THE DEFENDANT: Yes.

COUNSEL: And I explained to you the reason I couldn't do a little better than even what we did is because you already got deferred on other case and pretrial diversion, and you didn't make it, correct?

THE DEFENDANT: Yes.

At the conclusion of the hearing, the trial court again asked appellant if there was anything they had "done here this morning you don't understand or have a question about" to which appellant responded "No, sir."

While appellant strongly asserts he was concerned about his DACA status and the immigration consequences of his plea, there is contrary evidence in counsel's affidavit and in the trial court record. Faced with conflicting evidence about the circumstances leading up to appellant's guilty plea, the trial court resolved the conflicts and determined appellant's claims lacked merit. After denying appellant's application, the court made findings of fact which included:

1) Walpole is an officer of the Court, well known to the court and credible,

2) Counsel's affidavit is credible;

3) Appellant is currently facing negative deportation consequences of his guilty plea in this case;

4) Appellant's affidavit, attached to the application for writ of habeas corpus, is in conflict with Walpole's affidavit and with the guilty plea record;

5) Appellant's affidavit is not credible;

–12–

6) Appellant failed to allege and prove by a preponderance of the evidence facts that, if true, would entitle him to relief;

7) Appellant's self-serving statement in the affidavit is not credible;

8) Counsel reviewed the discovery and discussed the same with appellant; counsel did not see any viable legal defenses and told appellant he would likely lose at trial; and appellant failed to allege what possible defenses existed;

9) Counsel informed appellant of the deportation consequences of a guilty plea and that he would probably be deported in this case;

10) Counsel informed appellant that prosecutors were unlikely to give him a break given he had not been successful on deferred adjudication probation and had a bond forfeiture;

11) Counsel wanted time to work the case and seek lesser charges or pretrial diversion, but appellant did not want to wait and wanted out of jail as soon as possible;

12) Appellant said that even knowing the plea could have serious consequences, he wanted to proceed with the plea;

13) Counsel's statement that appellant's main concern in this case was his immediate release from jail is supported by the record; and

14) despite counsel informing him that he would probably be deported, appellant made the decision to plead guilty.

After reviewing the record, including the reporter's record of the appellant's plea hearing, and deferring to the habeas court's findings[1], we conclude appellant failed to demonstrate that but for counsel's errors, he would have rejected the plea

---

[1] In addition to appellant's affidavit, the application relied on the affidavit of appellant's mother, Sarah Chitsaka. The trial court found, however, that even if her affidavit was credible, it addressed only her communications with counsel. The affidavit was not dispositive of the issues raised in the application because Sarah Chitsaka was not present when counsel and appellant met or when appellant pleaded guilty in open court. For these reasons, the affidavit presents no evidence for our review, and we do not discuss it.

bargain agreement and insisted on a trial. *Ex parte Torres*, 483 S.W.3d at 49; *see also Ex parte Wheeler*, 203 S.W.3d 317, 325–26 (Tex. Crim. App. 2006) (deferential review applies even when findings are based on affidavits rather than live testimony). The trial court found Walpole's testimony that appellant was only concerned with getting out of jail and not concerned about the immigration consequences of a guilty plea credible. The only evidence appellant put forth to show that he would have opted for a trial if his attorney had correctly advised him about the immigration consequences of a guilty plea was his own affidavit which the trial court found to be lacking in credibility. Under these circumstances, we cannot conclude appellant has met his burden under the second prong of *Strickland*. We overrule appellant's issues.

We affirm the trial court's order denying relief on appellant's application for writ of habeas corpus.

/Amanda L. Reichek/
AMANDA L. REICHEK
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)
200770F.U05

–14–



## Court of Appeals
## Fifth District of Texas at Dallas

**JUDGMENT**

EX PARTE KEITH TEHDAI
CHITSAKA


No. 05-20-00770-CR

On Appeal from the 366th Judicial
District Court, Collin County, Texas
Trial Court Cause No. 366-82291-
2019.
Opinion delivered by Justice
Reichek. Justices Molberg and
Nowell participating.


Based on the Court's opinion of this date, we **AFFIRM** the trial court's order.


Judgment entered April 22, 2021